David BROWN, Plaintiff,

v.

Guy S. LO DUCA, Thomas S. Lo Duca,
and Lo Duca Bros. Realty Co., Inc.,
Defendants.

No. 69–C–498.

United States District Court
E. D. Wisconsin.

Dec. 5, 1969.

Patricia McMahon, Milwaukee, Wis.,
for plaintiff.

Michael P. Stupar and Steve Enich,
Milwaukee, Wis., for defendants.

## OPINION ON MOTIONS FOR PRE-
LIMINARY INJUNCTION AND
TO DISMISS

REYNOLDS, District Judge.

This is an action for injunctive relief
and punitive damages under the Fair
Housing Act of 1968, Title 42 U.S.C.A. §
3601 et seq. ("Act"). Plaintiff alleges
that because of his race, defendants have
discriminated against him with respect
to the rental and the negotiation of terms
of rental of an apartment.

The case is presently before the court
on plaintiff's motion for a preliminary
injunction and on defendants' motion to
dismiss. An order temporarily restrain-
ing defendants from renting any vacant
apartments was entered on October 24,
1969, which order was subsequently mod-
ified to include only one two-bedroom
apartment and, as modified, has contin-
ued in effect with the defendants' con-
sent until the court's decision on the
pending motions. The Court has con-
ducted an evidentiary hearing, taken a
view of the property involved, studied the
briefs filed, and is now prepared to de-
cide the motions.

The defendants challenge the jurisdiction of this court on the ground that the Act prohibits the initiation of private civil actions in the federal courts if there is a state or local fair housing law ("state law") which contains substantially equivalent remedies. They contend that the limitations of § 3610 are applicable to actions brought under § 3612, thereby prohibiting immediate civil actions in the federal district courts if there are equivalent state remedies.

Section 3610 provides that after the Department of Housing and Urban Development ("HUD") has taken certain specified administrative action, the aggrieved person may commence a civil action. But § 3610(d) contains this proviso:

"*  *  *  Provided,* That no such civil action may be brought in the United States district court if the person aggrieved has a judicial remedy under a State or local fair housing law which provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this subchapter.  *  *  *"

Defendants claim that § 101.60 of the Wisconsin Statutes (1967), the Wisconsin open housing law, provides rights and remedies which are substantially equivalent to the federal Act.

Plaintiff argues that § 3612 authorizes immediate civil actions in the federal district courts, that it is an alternative to § 3610, and that it is not limited by the language of § 3610(d), set forth above, because § 3612 contains no reference to prior administrative procedures.

Section 3612(a) provides in part:

"The rights granted by sections 3603, 3604, 3605, and 3606 of this title may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction.  *  *  *"

I believe that § 3612 provides an alternative to § 3610 and is not limited by the language of § 3610.

Section 3610 sets forth the procedure that HUD is to follow on the receipt of complaints from individuals. If there is a state law, then HUD is required to refer the complaint to the appropriate local agency. If the local agency does not act within thirty days, then HUD may take over and attempt a conciliation. If this does not work, then the complainant may sue in federal court, but such an action is limited by § 3610(d), cited above, which states he must first go to the state court.

Of course, by the time the complainant has gone the 3610 route, the housing unit involved would in all likelihood have been rented or sold. Congress, recognizing that § 3610 might not be an effective remedy, then set up an alternative procedure for one who claims to have been discriminated against in the sale or rental of housing. The alternative remedy was provided for in § 3612.

Section 3612 contains no statement that the procedures outlined in § 3610 must be followed before one can go to federal court under § 3612.

When one compares §§ 3610 and 3612, it is noted that both sections have provisions dealing with time, venue, amount in controversy, and the type of relief available. If § 3612 had been intended simply as an adjunct to § 3610, such repetition would have been unnecessary. Further, § 3610 requires a complaint to be filed with the Secretary within 180 days after the alleged violation occurred. Section 3612 requires a civil action be brought within the same time limit— 180 days. The civil action in § 3612 could not refer to an action brought only after pursuing an administrative remedy of § 3610 because no time has been provided for the agency to act. A further example of alternative remedies being provided by the two sections is that § 3610(f) refers to actions "pursuant to this section *or* section 3612" (emphasis added). And again, § 3612(a) refers to

actions "brought pursuant to this section *or* section 3610(d)" (emphasis added). The use of the disjunctive clearly indicates an alternative. These indications within the statute compel a conclusion that § 3612 provides an alternative remedy.

This conclusion is supported by the legislative history of the Act. The floor debates in both the House and Senate reveal that the intent of Congress was to provide two alternative procedures—an administrative procedure through HUD and an immediate civil action in the federal district court.[1] Statements by Representative Cramer (R-Fla.) and Representative Steiger (R-Wis.) recognize that direct civil action in federal court was a remedy under the proposed law. 114 Cong.Rec. 9568 (April 10, 1968). Representative Celler (D-N.Y.) also interpreted the act in this manner:

> "In addition to administrative remedies, the bill authorizes immediate civil suits by private persons within 180 days after the alleged discriminatory housing practice occurred in any appropriate United States district court or appropriate state or local court of general jurisdiction." 114 Cong. Rec. 9558 (April 10, 1968).

Representatives Pucinski (D-Ill.) and Randall (D-Mo.), who spoke in opposition to the Act, interpreted the provisions to allow immediate civil action in the federal courts. 114 Cong.Rec. 9604 (April 10, 1968).

The memoranda prepared by the staff of the House Judiciary Committee and by the Justice Department also support the alternative remedies theory.

> "In addition to the administrative remedy provided through the Department of Housing and Urban Development, the bill provides for an immediate right to proceed by federal action in an appropriate Federal or State court." Memorandum of the Justice Department, 114 Cong.Rec. 4908 (March 2, 1968).

> "Section 812 states what is apparently an alternative to the conciliation —then—litigation approach above stated: an aggrieved person within 180 days after the alleged discriminatory practice occurred, may, without complaining to HUD file an action in the appropriate U. S. district court." Memorandum of the House Judiciary Committee staff, 114 Cong.Rec. 9608 (April 10, 1968).[2]

1. The housing provisions were hammered out on the floor of Congress; no committee report dealt with fair housing.

2. I am aware of 1969 Wis.L.Rev. 420, in which Professor Arthur Larson concludes that access to the federal district court may be obtained only after the individual has exhausted state remedies. The basis upon which this conclusion is reached is obscure as there is no analysis or reasoning. In contrast, see Discrimination in Employment and in Housing: Private Enforcement Provisions of the Civil Rights Acts of 1964 and 1968, 82 Harv.L.Rev. 834 (1969), which examines in detail the provisions for private enforcement of the rights created under the Fair Housing Act. The authors acknowledge the existence of the argument that § 3612 refers only to those actions properly before a federal court after the procedures outlined in § 3610 have been followed. But after an exhaustive analysis of the statute and the policy behind its enactment, they conclude that direct access to federal court is available.

The authors acknowledge that there are inconsistencies within the Act which could be resolved by construing § 3612 to refer only to actions in federal court following agency action. However, they take the position that such discrepancies are more clearly explained as based on problems peculiar to housing discrimination.

"* * * Real estate has long been considered a unique commodity, not ordinarily replaceable by money damages. A person aggrieved by a violation of title VIII [the Fair Housing Act] may need an immediate remedy to prevent a bona fide purchaser from taking the property beyond the reach of the court. This would explain the fact that section [3612] actions are expedited while section [3610] actions, where the plaintiff has chosen the slower route through the Secretary, are not. * * * A similar rationale may be constructed to explain why deferral to state courts is required under section [3610], but not un-

This court has jurisdiction of the subject matter. Therefore, it is unnecessary to reach the question of whether the state law provides a "judicial remedy * * * which provides rights and remedies * * * which are substantially equivalent" to those provided by the Act.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff is a Negro American. The corporate defendant owns the apartment building involved. Two individual defendants are brothers who manage the building. They are white Americans. All contact involved herein was with Mr. Guy Lo Duca.

The apartment building is located on the southwest corner of West North Avenue (which runs east and west) and North 24th Place (which runs north and south) in the City of Milwaukee. It is a three-story building. The first floor is occupied by a music store which is operated by the Lo Duca brothers. Each of the upper two stories, which are laid out identically, has four apartments. The layout of each floor is as follows:

The northwest apartment, with one bedroom, faces on North Avenue.

The northeast apartment, with two bedrooms, is on the corner and thus faces on North Avenue and North 24th Place.

The southeast apartment, with two bedrooms, faces on North 24th Place and to the rear of the building.

The southwest apartment, with two bedrooms, faces to the rear of the building and overlooks a vacant lot.

I find that from the standpoint of light and a desirable view, the northwest, northeast, and southeast apartments are substantially the same.

The defendants claim that the four north apartments (two on each floor) are more desirable because they face on North Avenue than the two southeast apartments (one on each floor). This claim is without merit.

The defendants now state that the four north apartments rent for $200 per month, while the south apartments rent for $125 per month. All of the north apartments are now vacant, and all of the south apartments are now rented. One of the southeast two-bedroom apartments was rented for $125 per month after the plaintiff attempted to rent an apartment but before the temporary restraining order was entered.

The facts leading up to this lawsuit are as follows:

In November of 1968, plaintiff lived in the next block from the building involved here. He observed that defendants' building was being remodeled. Plaintiff was also aware of the fact that his then present dwelling place was to be condemned by the Wisconsin Highway Commission and that he and his family would have to move. He approached Mr. Lo Duca and inquired as to the availability of the apartments in the Lo Duca building. He was informed that the apartments were not yet ready for occupancy.

In September 1969, Mr. Brown again inquired about the apartments when he noticed that some of them were occupied. Mr. Lo Duca told him that the apartments would be rented to elderly people. Mr. Lo Duca did not at any time obtain a permit to operate a housing facility for the aged. At the present time, there are tenants in the building who are not elderly.

In October 1969, Mr. Brown again asked about an apartment. Mr. Lo Duca told him that any two-bedroom apartment would rent for $175 to $200 per

---

der section [3612]. By choosing the route of voluntary conciliation, the complainant has indicated that the violation of his rights is not so serious that direct federal coercion is necessary.

Hence, when conciliation fails, it is consistent with the complainant's own characterization of his claim to require that he seek a judicial remedy at the state level." 82 Harv.L.Rev. at 857–858.

**106**

month and that a $150 security deposit would be required. Mr. Lo Duca said that at that time he had no apartments available but that they would be ready in a couple of weeks and that Mr. Brown would be notified when they were ready. Mr. Brown was never notified.

Later in October, Mr. Brown telephoned Mr. Lo Duca and was told that only one two-bedroom apartment was then unrented and that the rent would be $200 a month in advance and a deposit of $150. At the time of the hearing, there were four vacancies, including two two-bedroom apartments. This discussion about rental involved a two-bedroom apartment.

On October 20, 1969, Mr. Brown asked for an application to rent an apartment which was given to him, completed, and left with Mr. Guy Lo Duca. Prior to this occasion, Mr. Lo Duca had not inquired as to Mr. Brown's financial situation or about any children Mr. Brown may have had.

During October 1969, Mr. Brown contacted Mrs. Janet Ford, a housing specialist for the Inner City Development Project. Mrs. Ford is white. On two occasions in October 1969, Mrs. Ford visited Mr. Guy Lo Duca and inquired about renting a two-bedroom apartment. On each occasion she was shown a two-bedroom apartment (the southeast apartments on the second and third floors). She was told that the rent was $125. No security deposit was mentioned. Mr. Guy Lo Duca also indicated to Mrs. Ford that he did not oppose renting to blacks but that some of his tenants did.

The foregoing recital, based on the present record, makes it clearly evident, and I so find, that Mr. Brown has been discriminated against because of his race with respect to the rental of the apartments in question in at least the following respects: (1) the availability of the apartments, (2) the amount of rent, and (3) the necessity of making a security deposit. In addition, the present record reflects a course of conduct directed against the plaintiff foreclosing the possibility of his having the opportunity to negotiate the terms of the rental of the apartments, all in violation of § 3604, Title 42 U.S.C.A.

The plaintiff has made the necessary showing of irreparable injury. The plaintiff has raised very substantial issues with respect to violations of the Fair Housing Law.

For the foregoing reasons, a preliminary injunction should be granted.

The foregoing opinion shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

ORDER DENYING MOTION TO DISMISS, GRANTING PRELIMINARY INJUNCTION, AND SETTING FURTHER HEARING

Based upon the opinion heretofore entered in the above-captioned action,

It is ordered that the temporary restraining order hereinbefore entered be and it is hereby vacated.

It is further ordered that the defendants' motion to dismiss the complaint be and it is hereby denied.

It is further ordered that the defendants be and they are hereby temporarily enjoined from directly or indirectly renting or otherwise making unavailable a vacant two-bedroom apartment in the premises located at 2451 West North Avenue, Milwaukee, unless and until the applicable provisions of the Fair Housing Act of 1968 have been complied with. This preliminary injunction will remain in effect pending final determination of this case on the merits. The parties shall notify the court within ten days from the date of this order if they desire to present any further evidence on the questions of the entry of a permanent injunction and the awarding of any actual and punitive damages in the event the plaintiff should ultimately prevail.

A hearing is scheduled for December 19, 1969, at 1:30 P.M. in Courtroom No. 425, Federal Building, Milwaukee, Wisconsin, at which time the court will:

1. Receive any further evidence on the questions indicated above, and

2. Make a determination based on the status of the record as it exists at that time as to whether to grant a permanent injunction and, if so, as to whether to award any actual or punitive damages.