**Luddie FORT, for herself and for all those similarly situated, et al.**

v.

**Robert C. WHITE d/b/a Robert C. White Co., Realtors.**

**Civ. No. H–74–189.**

United States District Court,
D. Connecticut.

Oct. 25, 1974.

Bruce C. Mayor, Hartford, Conn., for plaintiffs.

Arnold E. Buchman, Albert J. Callahan, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

BLUMENFELD, District Judge.

This suit was brought as a class action by Luddie Fort against Robert C. White, doing business as Robert C. White Co. White is a local realtor who manages approximately 50 apartment buildings. This suit complains of alleged racial discrimination by White against Fort, a black, and others similarly situated in the rental of apartment units. The plaintiffs invoked the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(3)–(4) (1970) and 42 U.S.C. § 3612 (1970) to secure relief from conduct made illegal by 42 U.S.C. §§ 1982, 3604 (1970).

The complaint, in brief, alleges that on April 29, 1974, Fort called the superintendent of one of White's buildings and asked if there were any vacancies. The superintendent, Mr. Bedard, indicated that an apartment fitting her specifications was at present occupied by a law student who would soon be vacating. When Fort showed up the next morning to view the apartment, however, Bedard denied having talked to her on the telephone and told her that there were no vacancies at present and would be none for months.

Becoming suspicious, Fort helped to arrange to have the apartment building "tested." Six white and four black acquaintances of Fort's inquired of the superintendent about vacancies. The whites were told that apartments were available; the blacks were told that there were no vacancies. Over the next month Fort helped to arrange tests of four other buildings managed by White, as well as his company's office. The plaintiffs' complaint states that these tests revealed similar discriminatory practices.

On the basis of these allegations the plaintiffs moved for a preliminary injunction to require White "to refrain from, and to correct his pattern and practice of violating 42 U.S.C. § 3604 in the rental of apartment units." White filed the instant motion to dismiss the application for a preliminary injunction.

At a hearing before this Court on June 27, 1974, the defendant's motion to dismiss was denied, with this opinion to follow. The plaintiffs' application for a preliminary injunction was also denied from the bench based on the Court's finding that they faced no irreparable injury: the evidence showed that "the practice complained of, whether it existed or not, is now being amply safeguarded against any possible continuance." Excerpt of Transcript, June 27, 1974, at 11.

### White's Motion to Dismiss

The defendant's first contention is that by complaining of a "pattern and practice" of discrimination the plaintiffs were not stating a claim under 42 U.S.C. § 3612 (1970). That section provides a right to sue for relief from conduct made illegal by 42 U.S.C. §§ 3603–3606 (1970); those sections do not use the words "pattern and practice" in describing the discriminations prohibited.[1] White's second contention is that the broad relief requested by the plaintiffs

---

1. The relevant prohibitions are contained in 42 U.S.C. § 3604 (1970) and make it unlawful:

"(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.

". . . .

"(d) To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."

cannot properly be given under 42 U.S. C. § 3612 (1970).[2]

White's first argument is based on inferences drawn from the structure of the Code. Section 3612 provides, *inter alia,* that private persons may sue in federal court to enforce the rights granted by §§ 3603–3606;[3] § 3613 provides:

"Whenever the Attorney General has reasonable cause to believe that any person or group of persons is en-

---

2. The plaintiffs' complaint requests:

"1. That this Court accept jurisdiction.

"2. That this Court enter a declaratory judgment declaring the acts of the Defendant to be in violation of the Constitution and the laws of the United States.

"3. That this Court issue a temporary and a permanent injunction enjoining the Defendant, his employees, servants and agents from:

"a. Failing or refusing to rent a dwelling to any person because of race, color, religion or national origin and from making any dwelling unavailable to any person on account of race, color, religion or national origin.

"b. Discriminating against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith because of race, color, religion or national origin.

"c. Making, printing, or publishing or causing to be made, printed or published, any notice, statement or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, religion or national origin, or an intention to make such preference, limitation or discrimination.

"d. Representing to any person because of race, color, religion or national origin that any dwelling is not available for inspection or rental when such dwelling is in fact so available.

"e. Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act of 1968.

"4. That this Court issue a temporary and a permanent injunction requiring the Defendant to adopt and implement an affirmative program to correct the effects of his past discriminatory practices at all of the apartment buildings in which he rents apartments.

"5. That this Court issue a temporary and a permanent injunction requiring the Defendant to maintain for, and to file with this Court, records containing the name, address and race of each individual inquiring about the availability or terms of rental of an apartment and further containing the Defendant's actions in response thereto.

"6. That this Court award the Plaintiff Luddie Fort actual and punitive damages pursuant to 42 U.S.C. § 3612(c).

"7. That this Court award the Plaintiff Luddie Fort actual and punitive damages pursuant to 42 U.S.C. § 1982.

"8. That this Court award the Plaintiff Bookwalter actual and punitive damages pursuant to 42 U.S.C. § 3612(c).

"9. That this Court award the Plaintiffs' costs and reasonable attorney's fees."

3. 42 U.S.C. § 3612 (1970):

"(a) The rights granted by sections 803, 804, 805, and 806 [42 U.S.C. §§ 3603–3606] may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction. A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred: *Provided, however,* That the court shall continue such civil case brought pursuant to this section or section 810(d) [42 U.S.C. § 3610(d)] from time to time before bringing it to trial if the court believes that the conciliation efforts of the Secretary or a State or local agency are likely to result in satisfactory settlement of the discriminatory housing practice complained of in the complaint made to the Secretary or to the local or State agency and which practice forms the basis for the action in court . . . .

"(b) Upon application by the plaintiff and in such circumstances as the court may deem just, a court of the United States in which a civil action under this section has been brought may appoint an attorney for the plaintiff and may authorize the commencement of a civil action upon proper showing without the payment of fees, costs, or security. A court of a State or subdivision thereof may do likewise to the extent not inconsistent with the law or procedures of the State or subdivision.

"(c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees."

gaged in a pattern or practice of resistance to the full enjoyment of any the rights granted by this title, or that any group of persons has been denied any of the rights granted by this title and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court by filing with it a complaint setting forth the facts and requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice or denial of rights, as he deems necessary to insure the full enjoyment of the rights granted by this title."

From these two sections White argues that actions alleging a "pattern and practice" of discrimination are properly brought only by the Attorney General.

White's second argument, which deals with the scope of relief available to the plaintiffs, is also based on inferences drawn from the structure of the Code— in this instance White relies on provisions for relief in the two sections previously considered plus the provisions of § 3610. Section 3610 provides that one who has been injured by a discriminatory housing practice may file a complaint with the Secretary of Housing and Urban Development who, if he decides to resolve the complaint, will attempt to negotiate a settlement. If the Secretary is unable to secure compliance with the law within 30 days, the complainant is remitted to his right to sue in state or federal court. If the suit is brought in federal court and "the court

finds that a discriminatory housing practice has occurred or is about to occur, the court may . . . enjoin the respondent from engaging in such practice or order such affirmative action as may be appropriate." 42 U.S.C. § 3610(d) (1970).

The statutory pattern thus provides three separate routes for redress of discriminatory housing practices, §§ 3610–3613. In explaining the differences among them, White begins with the argument that ". . . Congress intended that whenever possible, age old habits of discrimination were to be broken voluntarily and at the same time, individuals suffering injury caused by specific discriminatory acts be recompensed immediately." For White this assumed congressional intent [4] provides clear guidance as to the scope of relief that is proper under each of the three sections: § 3610 provides the procedure an individual must follow to obtain broad corrective relief from the court; § 3612 provides a more expeditious avenue for those seeking only relief "restorative and compensatory in nature"; and § 3613 allows no one but the Attorney General to seek broad corrective relief from widespread violations of the law without first going to the Secretary under § 3610.

White's arguments both attempt to read this portion of the Code (which is part of the Civil Rights Act of 1968) narrowly and restrictively. This approach is a mistake, however. In Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), the Supreme Court was presented with an action by white residents of

---

4. Contrary to White's assumption, however, it is quite difficult to pin down the legislative history of these provisions. *See* Note, Discrimination in Employment and in Housing: Private Enforcement Provisions of the Civil Rights Acts of 1964 and 1968, 82 Harv.L.Rev. 834, 863 (1969). "The Act was debated, as H.R. 2516, on the floor of the House of Representatives and passed in the wake of the assassination of the Rev. Martin Luther King. As to be expected, floor debate was more emotive than clarifying."

Crim v. Glover, 338 F.Supp. 823 (S.D.Ohio 1972); *cf.* Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); United States v. Hunter, 459 F.2d 205, 210–211 n. 4 (4th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). It is relatively clear, though, that § 3612 was meant to be a strong independent remedy, not narrowly channeled by §§ 3610, 3613. *Cf.* Crim v. Glover, 338 F.Supp. 823 (S.D. Ohio 1972), and cases cited therein.

a segregated apartment complex complaining of the discriminatory practices of their landlord. The complainants had first approached the Secretary under § 3610 and, when he took no action, then sued in federal court. The Supreme Court took an extraordinarily broad view of the scope of the remedies and standing authorized by the 1968 Act, concluding that "insofar as tenants of the same housing unit that is charged with discrimination are concerned," standing would be defined as broadly as permitted under article III of the Constitution. *Id.* at 209, 93 S.Ct. at 367. In the process of reasoning to this conclusion the Court noted that "[t]he language of the Act is broad and inclusive," *id.*, and discussed the "important role" that private attorneys' general actions served in implementing the 1968 Act. *Id.* at 211, 93 S.Ct. 364.

 In the instant case Fort is not now attempting to maintain a private attorney's general action; [5] she is merely suing for injuries to herself and as the representative of an as-yet-uncertified class also sustaining injuries. In the more traditional posture of this case White's limiting arguments are even more inappropriate than they were found to be in *Trafficante,* for the view of standing that the Court must adopt in order to permit Fort's action is much less broad. [6]

 Having concluded that § 3612 should not be read narrowly, it becomes easy to dispose of White's two specific arguments, for both are fatally flawed. With respect to White's first argument, that the plaintiffs do not have standing to raise a "pattern or practice" claim, the defect is that the *characterization* of the facts upon which the claim is founded is not binding upon the Court. My duty is to determine whether the *facts* alleged state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). If the facts alleged support a claim under § 3612 it is immaterial that the plaintiffs have not couched their complaint in the statutory terms. 2A J. Moore, Federal Practice ¶ 12.08, at 2274, 2284 n. 7 (2d ed. 1968). In the instant case the plaintiffs have claimed refusals to show or rent apartments based upon racial discrimination; these claims allege violations of 42 U.S.C. § 3604 (1970); violations of § 3604 are explicitly made actionable under § 3612.

 With respect to White's second argument, that the Court cannot grant the broad relief the plaintiffs have requested, the flaw is that the language of § 3612 provides otherwise: "The court may grant as relief, as it deems appro-

---

5. *See* Transcript, June 27, 1974, at 10–12. This Court does not intimate that a private attorney's general action could be maintained here by Fort. Even *Trafficante* recognized that the "case or controversy" requirement of article III demands some injury to the plaintiff. The case went no farther than the holding that those whites who were tenants of a housing complex could complain about discrimination against blacks in rentals in that complex, reasoning that those whites had lost the benefits of an integrated living environment. Whether or not Fort, as a private attorney general, would satisfy the requirements of Article III is a question that we need not and do not reach here.

6. Section 3612 clearly allows individual private actions for relief from discriminatory practices, and the existence of the Attorney's General authority to sue under § 3613 does not impliedly exclude class actions under § 3612. Indeed, the Attorney General is em-

powered to seek only "preventive relief," and one who had been injured by the practices that led the Attorney General to institute his action would still have to sue under § 3612 to recover damages. It would serve no purpose to forbid all those whose injuries arose from the same nucleus of facts from joining in a class action; only judicial diseconomies would result.

No intimation is intended as to the existence of a proper class in this case. There has as yet been little evidence on the subject, and the Court defers a ruling on whether Fort's class should be certified. For the purposes of the defendant's motion to dismiss, however, it must be assumed that Fort will be able to show the existence of a certifiable class. *Cf.* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

priate, any permanent or temporary injunction, temporary restraining order, or other order . . . . " 42 U.S.C. § 3612(c) (1970). The relief to be granted is *any deemed appropriate* by the Court within its discretion. While the broad relief requested here may not be deemed appropriate after a hearing on the merits,[7] the Court cannot grant a motion to dismiss based simply on the fact that this relief has been requested.

The defendant's motion to dismiss the application for a preliminary injunction is denied.

So ordered.

---

7. *Cf.* Williams v. Matthews Co., 499 F.2d 819, 829 (8th Cir.), petition for cert. filed, 43 U.S.L.W. 3217 (U.S. Sept. 18, 1974) (No. 74-296).