**WHEATLEY HEIGHTS NEIGHBORHOOD COALITION et al.,
Plaintiffs,**

v.

**JENNA RESALES CO. et al.,
Defendants.**

**No. 76 C 409.**

United States District Court,
E. D. New York.

April 5, 1977.

Eisner, Levy, Steel & Bellman, P. C., New York City, for plaintiffs by Richard F. Bellman, New York City.

Kelly, Luglio & Van Cook, Deer Park, N. Y., for defendants Jenna Resales Co. and related defendants by Donald F. Van Cook, Deer Park, N. Y.

Flower & Plotka, Bay Shore, N. Y., for defendants Easton Home Sales Co. and related defendants by Lark Shlimbaum, Bay Shore, N. Y.

Goldson & Goldson, Mineola, N. Y., for defendant Multiple Listing Services of Long Island, Inc. by Howard W. Goldson, Mineola, N. Y.

United States Dept. of Justice, Amicus Curiae by Robert E. Cook, Attorney, Housing Section, Civil Rights Division, Washington, D. C.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is a class action brought by the Wheatley Heights Neighborhood Coalition ("the Coalition"), an association of residents of the Wheatley Heights section of the Town of Babylon, New York, and by individual white and black homeowners in that neighborhood. Plaintiffs claim that defendant real estate companies and their employees are engaging in "racial steering" and "blockbusting" in violation of section 804 of the Fair Housing Act of 1968, 42 U.S.C. § 3604; 42 U.S.C. §§ 1981 and 1982; and the Thirteenth Amendment. Jurisdiction is based on 42 U.S.C. § 3612 and 28 U.S.C. § 1343. The complaint alleges that defendants are promoting racial segregation by, *inter alia*, steering white prospective home buyers away from the Wheatley Heights neighborhood and to predominantly white areas in Babylon, while directing blacks to Wheatley Heights and away from the surrounding areas. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.[1]

Wheatley Heights consists primarily of single-family houses built since the early 1960's. Originally a white neighborhood, it is now in a transition period with increasing numbers of minority people purchasing homes in the area. As the rate of sales by whites and purchases by blacks picked up in the mid-1970's, Wheatley Heights residents began to suspect that real estate brokers were fostering these changes by means of racial steering and blockbusting. This led in July 1975 to the formation of the Coalition, with the avowed purpose of halting the discriminatory housing practices of the real estate brokers and promoting a stable, racially integrated community in Wheatley Heights.

In late 1975 the Coalition undertook a "testing program" of defendants Jenna Resales Co. and Jenna Realty Corp. collectively, "Jenna") and Easton Home Sales Co. ("Easton"), which were the major real estate companies engaged in selling houses in Wheatley Heights. Several black and white members of the Coalition and volunteers working with Suffolk Housing Serv-

---

1. Since defendants have filed answers to the complaint, their "motions to dismiss" are treated as motions for judgment on the pleadings under Rule 12(c), F.R.Civ.P.

ices, a civil rights organization, pretended to be interested in homes in Babylon. Allegedly, the black testers were steered to the Wheatley Heights neighborhood while the white testers were shown homes in the surrounding white areas.

With this evidence in hand, the Coalition and 47 of its members filed the present class action on March 1, 1976. On April 26, 1976 the court granted leave to 54 individuals to intervene as additional plaintiffs, and on September 8, 1976 the court certified this as a class action with the class defined as "all residents within the area of the United States sub-postal zone known as Wheatley Heights in the Town of Babylon . . . ."

In their motions, defendants do not contest that racial steering violates the Fair Housing Act. Courts previously addressing this question have held that § 3604(a), which makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex or national origin," outlaws racial steering. *Zuch v. Hussey*, 394 F.Supp. 1028 (E.D.Mich.1975); *Fair Housing Council of Bergen County, Inc. v. Eastern Bergen County Multiple Listing Service, Inc.*, 422 F.Supp. 1071 (D.N.J.1976). Even if testers cannot properly claim a violation of § 3604(a) because they are not actually seeking to purchase a home, it is clear they can claim that racial steering as applied to them violates the broader language of § 3604(b), which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or *in the provision of services* or facilities in connection therewith, because of race, color, religion, or national origin." 42 U.S.C. § 3604(b) (emphasis supplied). See Note, Racial Steering: The Real Estate Broker and Title VIII, 85 Yale L.J. 808, 821 n. 48 (1976).

Rather, defendants' motions are aimed primarily at plaintiffs' assertion that 42 U.S.C. § 3612 confers jurisdiction on this court over the present action. Defendants' argument, in brief, runs as follows. Section 3612 provides the basis for a cause of action only for those plaintiffs who are the direct victims of the alleged discrimination. Indirect victims must sue under § 3610, which mandates that certain administrative remedies be pursued prior to suit. Since plaintiffs in this action are homeowners, none of whom sought to purchase a home, they are merely indirect victims of the alleged discrimination and they therefore fail to state a claim under § 3612.

Although not framed in such terms, defendants' motion actually challenges plaintiffs' standing to prosecute this action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

Standing has properly been called "one of 'the most amorphous [concepts] in the entire domain of public law.' " *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Consistency in the case law is difficult to find.

Nevertheless, courts have developed a two-part test by which they purport to decide standing cases. Plaintiffs must demonstrate that (1) they have suffered an "injury in fact" as a result of defendants' actions, and (2) the interest sought to be protected must arguably be within the zone of interests to be protected by the statute in question. *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The first component stems from Article III of the Constitution. Jurisdictional in nature, it is a "threshold requirement" which must be satisfied in order to maintain an action in federal court. *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Evans v. Lynn*, 537 F.2d 571, 589 (2 Cir. 1976) (*en banc*). A plaintiff "must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the

courts' intervention." *Warth v. Seldin, supra*, 422 U.S. at 508, 95 S.Ct. at 2210.

In an effort to meet this "injury in fact" requirement, one plaintiff on behalf of the others submitted an affidavit in which he alleges that plaintiffs suffer the following injuries as a result of defendants' discriminatory practices: they do not reside in a racially stable community, they find it more difficult to sell their homes because defendants steer prospective white purchasers away from Wheatley Heights, and their property values will decline should these practices continue. In other words, the affidavit concludes, their "homes and lives are threatened." [2]

These allegations satisfy the *Warth* standards. The alleged harm is concrete and particularized, and a court order enjoining the alleged racial steering would relieve this injury by terminating a major disruptive influence on the racial and financial stability of Wheatley Heights. The alleged harm is surely as great, if not greater, than the "loss of important benefits from interracial associations" which was found to be an adequate allegation of injury in fact in *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

Plaintiffs' claims of injury also fit within the holding in *Shannon v. United States Dept. of Housing & Urban Development*, 436 F.2d 809, 818 (3 Cir. 1970), which held the "injury in fact" test was met by residents of an urban renewal area who alleged that "the concentration of lower income black residents in a 221(d)(3) rent supplement project in their neighborhood will adversely affect not only their investments in homes and businesses, but even *the very quality of their daily lives*" (emphasis supplied). The Supreme Court quoted the emphasized words with approval in *Trafficante v. Metropolitan Life Insurance Co., supra*, 409 U.S. at 211, 93 S.Ct. 364.

The second component of standing, that the interest sought to be protected must arguably be within the zone of interests to be protected by the statute in question, is where the real dispute lies in this case. This is the prudential, court-created aspect of standing. As such, its scope can be varied by Congressional enactment. *Warth v. Seldin, supra*, 422 U.S. at 501, 95 S.Ct. 2197.

As indicated above, defendants' argument is that only direct victims of alleged housing discrimination can sue under § 3612. Indirect victims, such as plaintiffs in this action, are relegated to § 3610, which requires utilization of certain administrative procedures prior to suit.

Section 3610 authorizes suits by "[a]ny person who claims to have been injured by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur . . .." 42 U.S.C. § 3610(a). In *Trafficante v. Metropolitan Life Insurance Co., supra,* the Supreme Court construed this section to define standing as broadly as is constitutionally permissible. In other words, the prudential standing rules were virtually eliminated, leaving only the Article III requirement of injury in fact.

In the present action, since plaintiffs did not pursue the administrative remedies set forth in § 3610, they filed this action under § 3612. This section provides that the "rights granted by [§§ 3603–3606] may be enforced by civil action in appropriate United States district courts . . .." 42 U.S.C. § 3612(a).

In contending that this complaint fails to state a claim under § 3612, defendants embrace the reasoning of *TOPIC v. Circle Realty*, 532 F.2d 1273 (9 Cir.), *cert. denied,* 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137 (1976). In that case TOPIC, an organization of homeowners dedicated to preserving an integrated community, and three of its members filed suit against various real estate brokers whose racial steering practices were uncovered by TOPIC's testing. After

---

**2.** When defendants challenge plaintiffs' standing, it is appropriate to allow plaintiffs to submit affidavits to supply particularized allega- tions of fact deemed supportive of their standing. *Warth*, 422 U.S. at 501, 95 S.Ct. 2197.

noting that *Trafficante* dealt solely with § 3610, the Ninth Circuit held that "only the direct victims of [racial steering] have a cause of action under section 3612." *Id.* at 1275.

*Trafficante,* however, actually involved both §§ 3610 and 3612. The original complaint was framed in terms of both sections as well as 42 U.S.C. § 1982, and subsequent intervenors filed complaints solely under §§ 3612 and 1982. Faced with this procedural posture of the case, the Ninth Circuit in *Trafficante* held that none of the three sections upon which plaintiffs relied conferred standing on the plaintiffs because, as current renters rather than as those seeking to rent, they were not direct victims of the alleged discriminatory housing practices. The Supreme Court reversed on the ground that, for "suits brought under the 1968 [Fair Housing] Act," Congress had defined standing as broadly as is constitutionally permissible. 409 U.S. at 209, 93 S.Ct. at 367.

Although the Supreme Court focused on § 3610 in *Trafficante,* it mentioned § 3612 without distinguishing it. The Court's failure to do so, particularly since it declined to reach the question of standing under § 1982, *id.* at 209 n. 8, 93 S.Ct. 364, lends support to the view that the Court's ruling extends to both §§ 3610 and 3612. See *Fair Housing Council of Bergen County, Inc. v. Eastern Bergen County Multiple Listing Service, Inc., supra,* 422 F.Supp. at 1082. In fact, this was the understanding of the district court in *Trafficante* on remand [3] and of at least one other court which subsequently considered the question. See *Village of Park Forest v. Fairfax Realty Co.,* P–H EOH ¶ 13,699 (N.D.Ill.1975).

The court, however, need not rely on the view that *Trafficante* specifically resolved the scope of standing under § 3612, for the reasoning underlying the Supreme Court's decision in *Trafficante* with respect to § 3610 is equally applicable to § 3612. As the Court explained its ruling:

"Since HUD has no enforcement powers and since the enormity of the task of assuring fair housing makes the role of the Attorney General in the matter minimal, the main generating force must be private suits in which, the Solicitor General says, the complainants act not only on their own behalf but also 'as private attorneys general in vindicating a policy that Congress considered to be of the highest priority.' The role of 'private attorneys general' . . . serves an important role in this part of the Civil Rights Act of 1968 in protecting not only those against whom a discrimination is directed but also those whose complaint is that the manner of managing a housing project affects 'the very quality of their daily lives.' *Shannon v. United States Dept. of Housing & Urban Dev.,* 436 F.2d 809, 818 (CA 3)." 409 U.S. at 211, 93 S.Ct. at 367.

Faced with "the enormity of the task of assuring fair housing," the availability of private attorneys general surely should not be restricted by precluding those "indirectly" harmed by housing discrimination from making use of the alternative remedy of civil suit under § 3612.

The Ninth Circuit in *TOPIC,* after comparing § 3610 with § 3612, reached a contrary conclusion. It held that, while broad language of § 3610 might confer standing on indirect victims of housing discrimination, the "narrower language" of § 3612 precluded suits by such individuals.

In addition, it perceived the following "statutory design" in which §§ 3610 and 3612 provide complementary enforcement procedures. Section 3610 permits suit by a broad spectrum of potential plaintiffs, but only after they have sought relief through administrative proceedings. In the "slower, less adversary context of administrative reconciliation and mediation," it would be more likely that community-wide discrimination would be overcome. The primary victims of discriminatory housing practices, on the other hand, need the swift judicial relief provided by § 3612. There are no pre-conditions to suit, and plaintiffs receive

---

**3.** *Amicus curiae* brief of Justice Department at 11 n. *.

expedited treatment under § 3614. *TOPIC,* 532 F.2d at 1275–76.

The Department of Justice, in its brief filed *amicus curiae,* assails these propositions as in conflict with the legislative history of the Fair Housing Act.[4] Nothing in the legislative history suggests that standing under § 3612 was designed to be narrower than that under § 3610, while several statements support the view that the scope of standing is the same under each section.

The original "open housing" bills introduced in Congress in 1966 provided for enforcement solely by court action. The addition of administrative remedies was proposed as a means of providing quicker relief than could be achieved through litigation. 112 Cong.Rec. 18402 (Rep. Conyers). The final version accepted in 1968 included both methods of compliance. Rep. Emmanuel Celler, the floor manager for the Fair Housing Act in the House, simply presented them as alternatives: "In addition to administrative remedies the bill authorizes immediate civil suits by private persons." 114 Cong.Rec. 9558. Rep. Gerald Ford also noted that § 3612 was "an alternative to the conciliation then litigation approach" of § 3610. *Id.* at 9612.

The court recognizes that the "legislative history of the Act is not too helpful." *Trafficante,* 409 U.S. at 210, 93 S.Ct. at 367. The Act was passed in the wake of the assassination of the Rev. Martin Luther King, and there are no committee reports.

Nevertheless, the legislative history tends to support the conclusion that the *TOPIC* case was wrongly decided. "It is relatively clear that § 3612 was meant to be a strong independent remedy, not narrowly channeled by §§ 3610, 3613." *Fort v. White,* 383 F.Supp. 949, 952 n. 4 (D.Conn.1974). When faced with other questions concerning the relationship of §§ 3610 and 3612, such as whether litigants must exhaust their administrative remedies under § 3610 prior to suit under § 3612, and whether the prohibi-

tion of suits under § 3610, if there is an equivalent State law, applies to suits under § 3612, courts have consistently held that the two sections provide alternative remedies for litigants. *Crim v. Glover,* 338 F.Supp. 823 (S.D.Ohio 1972); *Brown v. LoDuca,* 307 F.Supp. 102 (E.D.Wis.1969).

It may seem anomalous to construe §§ 3610 and 3612 as providing alternative remedies, either of which may be pursued at the choice of the plaintiff. The natural inclination of courts is to attempt to explain discrepancies such as exist between these two sections. In this instance, however, by proposing a reasonable explanation for the requirement of exhaustion of administrative remedies in one of the sections and not in the other, the *TOPIC* court imposed its own rationale onto a statute which must be viewed as an oddity. The Fair Housing Act was "the result of a political compromise, a product more of the desire for passage than the desire for a rational scheme for uprooting discrimination." Note, Discrimination in Employment and in Housing: Private Enforcement Provisions of the Civil Rights Acts of 1964 and 1968, 82 Harv.L.Rev. 834, 835 (1969). The discrepancies between §§ 3610 and 3612 have been explained in the following way:

> "The agency's existence [in § 3610] is based on the desirability of providing a process divorced from the normal aspects of compulsion for the vindication of rights long and subtly ignored by large segments of society. Only if the courts realize that the agency in title VII is assigned a new function, which extends the concept of voluntariness to the statute itself, can the apparent conflict be resolved." *Id.* at 863.

The statutory analysis in cases such as *TOPIC,* on the other hand, "would seem to be much more in the nature of justifications rather than explications of congressional intent." *Johnson v. Decker,* 333 F.Supp. 88 (N.D.Cal.1971).

---

**4.** The court hereby grants leave to the Justice Department to file their brief *amicus curiae.* That the Justice Department is investigating alleged housing discrimination as a result of a complaint filed by Suffolk Housing Services does not call for denial of leave to file this brief, despite Jenna's suggestion to the contrary.

The only other court to directly address the issue raised by *TOPIC* also rejected the Ninth Circuit's arguments. In *Fair Housing Council of Bergen County, Inc. v. Eastern Bergen County Multiple Listing Service, Inc.*, 422 F.Supp. 1071 (D.N.J.1976), a case very similar to the present one, plaintiffs included a non-profit association dedicated to the promotion of equal opportunities in housing and 14 individual black and white residents, and the complaint charged defendant brokerage companies with racial steering. Declaring that the Fair Housing Act must be given the broadest possible scope, the court declined to follow *TOPIC* and held that plaintiffs stated a claim under § 3612.

Finally, the Justice Department's *amicus curiae* brief indicates that HUD's 1973 pamphlet, "Fair Housing USA," describes §§ 3610 and 3612 as alternative modes of enforcement. The pamphlet makes no distinction as to who may use each avenue of relief. "[C]onsistent administrative construction of the Act is entitled to great weight." *Trafficante*, 409 U.S. at 210, 93 S.Ct. at 367.

In the absence of any difference in the scope of standing provided by §§ 3610 and 3612, *Trafficante* controls the standing issue in this case. The court therefore holds that plaintiffs have standing to bring this suit and that they state a claim under § 3612.[5]

Accordingly, defendants' motions for judgment on the pleadings are denied.

SO ORDERED.

---

**5.** This holding makes it unnecessary to reach the question of standing to sue under 42 U.S.C. § 1982. See *Trafficante*, 409 U.S. at 210 n. 8, 93 S.Ct. 364.