**Fred Donald JOHNSON, and Sandra Johnson, his wife, Plaintiffs-Appellants,**

**v.**

**JERRY PALS REAL ESTATE, and Erv Jurinek, Defendants-Appellees.**

**No. 72–1546.**

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1973.

Decided Sept. 13, 1973.

Robert G. Schwemm and F. Willis Caruso, Chicago, Ill., and James M. Rosenbaum, Minneapolis, Minn., for plaintiffs-appellants.

Samuel A. La Susa, Dom J. Rizzi, Chicago, Ill., for defendants-appellees.

Before MOORE, Senior Circuit Judge,[1] and CUMMINGS and PELL, Circuit Judges.

1. Senior Circuit Judge Leonard P. Moore of the Second Circuit is sitting by designation.

PER CURIAM.

This civil rights action was filed under 42 U.S.C. §§ 1982 and 3604[2] and was based on defendants' alleged refusal to show the Negro plaintiffs any suitable residences in Riverdale, South Holland and Dolton, Illinois. Plaintiffs sought $500 in damages plus reasonable attorneys' fees and costs, as well as declaratory and injunctive relief. They also sought $10,000 in exemplary or punitive damages. After a bench trial, judgment was entered in favor of defendants, except in a minor respect.[3]

The testimony showed that plaintiffs are a young Negro couple residing in Chicago with their two children. They have an equity of $5,000 in their present residence. The husband earns a salary of $12,000 per year. They desired to purchase a three or four bedroom bi-level home in the $24,000 to $30,000 price range located in Dolton, South Holland or Riverdale, Illinois. Therefore, on May 23, 1970, they visited the South Holland office of the defendant real estate company where they talked to defendant salesman Erv Jurinek. He told them no such properties were available. He encouraged them to consider moving to Harvey, which has a 31% black population. Eventually, he jotted down for them the addresses and prices of three ranch-type houses in Harvey, Calumet City and Dolton, Illinois. Jurinek told the Johnsons he would contact them by phone if any bi-levels became available in the desired locations, but he never telephoned them subsequently.

Half an hour beforehand, Mr. and Mrs. Paul Edwards, a white couple, were given formal listings for a bi-level with four bedrooms at 13629 Atlantic in Riverdale and a three-bedroom bi-level at 15224 Oak Street in Dolton, both meeting plaintiffs' specifications.[4] After the plaintiffs were denied bi-level listings in South Holland, Dolton and Riverdale, another white couple, the Jack Shapiros, were offered the same two listings in Riverdale and Dolton as the Edwards had been offered.[5] The Shapiros and the Edwards were served by the defendant firm's salesman Neil Verhagen, and follow-up sales attempts were directed toward both couples.

The testimony also showed that the Johnsons had not yet placed their home on the market for sale because they would first have to find a home in which they were interested. They were not asked if they had a home to sell, nor was such an inquiry made of the Shapiros. When asked, the Edwards indicated that they had a home to sell, although it was not on the market. The defendant firm has never sold a home to a Negro in Dolton or South Holland.

2.  42 U.S.C. § 1982 provides:
    "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."
    In pertinent part, 42 U.S.C. § 3604 makes it unlawful:
    "(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.
    \*      \*      \*      \*      \*
    "(d) To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."

3.  The judgment assessed defendants with $200 costs for their attorney's "unreasonable failure to cooperate in matters of Discovery and with the Court." Defendants have not challenged this assessment and it will therefore remain undisturbed.

4.  They were also offered two bungalows and four ranch-types in South Holland, Dolton and Harvey. All eight listings were pictorial and detailed.

5.  The Shapiros were also offered three other bi-level residences in Dolton and South Holland. One of them was $2900 more than the Johnsons' top range; another was $900 higher; and the number of bedrooms in the third does not appear in the record. Four of the five listings were pictorial and detailed.

Allen Collins, a resident of Lansing, Illinois, was a white witness appearing for plaintiffs. He stated that one of the defendant firm's agents, a Mr. Moore, responded in a laughing manner as follows when queried in 1971 by Collins as to whether he would show his listings to blacks: "We don't have to show them everything. Ha. We can misplace a few pages." The trial judge stated, "I can't attach too much significance to that kind of a casual conversation." We cannot agree.

According to the 1970 government census data, of Dolton's 25,937 population, only 42 are Negro; of South Holland's 23,931 population, only 12 are Negro; and of Riverdale's 15,806 population, only 17 are Negro.

■ On October 27, 1971, the district court entered findings of fact and conclusions of law prepared by defense counsel. However, more than four months thereafter, the court amended those findings of fact and conclusions of law by entering substitute ones submitted on November 9, 1971, by plaintiffs' counsel. These were in accordance with the court's trial rulings in favor of defendants. The findings showed that the Edwards and the Shapiros were not actually seeking to purchase homes but were "testers" investigating to see if the defendant firm had any homes available conforming to plaintiffs' requests. Finding 13 and conclusion 4 are crucial and provide as follows:

"13. That FRED DONALD JOHNSON and SANDRA JOHNSON, His Wife, were not deprived of the right of buying a home because they owned a home on May 23, 1970, and they did not put it up for sale."

\* \* \* \* \* \*

"4. That although there was an aura and suspicion that there may have been some discrimination, the Plaintiffs were not deprived of the right of buying a home because they owned a home on May 23, 1970, ant it

had not been placed for sale and, hence, they were not in the market for a house."

It is undisputed that the foregoing finding and conclusion were drafted by plaintiffs' counsel to mirror the district judge's trial rulings. Therefore, defendants cannot legitimately assert that plaintiffs waived any error inherent in them.

■ The principal question on appeal is whether the district court's judgment was correct because plaintiffs had not placed their present residence for sale before seeking a new home in the three Chicago suburbs in question. This ground was embodied in conclusion of law 4 and was the sole basis advanced for the judgment in favor of defendants. They no longer champion this ground, and we certainly know of no such requirement before an action may be brought under 42 U.S.C. §§ 1982 and 3604. It is significant that even defendants exacted no such requirement from the plaintiffs or Shapiros. Since it is undisputed that plaintiffs were actual home seekers, it was erroneous as a matter of law for the district court to rest its decision on the fact that they had not placed their current home on the market before seeking a new residence.

No such requirement inheres in 42 U.S.C. § 1982 (note 2, *supra*) which bars all racial discrimination in the sale of property. Jones v. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, see Bell Realty v. Commission on Human Relations, 130 Ill.App.2d 1072, 266 N.E.2d 769 (1971) under a comparable municipal ordinance. 42 U.S.C. § 3604(a) makes it unlawful to "refuse to negotiate for the sale \* \* \* or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion or national origin." Likewise, Section 3604(d) makes it unlawful to represent that a dwelling is not available for sale because of the inquirer's race, color, religion or national origin. To permit

the restrictive statutory interpretation adopted by the district court would be to encourage real estate agents to use such an artifice to avoid selling white properties to blacks, despite the clear Congressional mandate to the contrary. See Jones v. Mayer, *supra* at 447–449, 88 S. Ct. 2186 (concurring opinion of Mr. Justice Douglas); Smith v. Adler, 436 F.2d 344, 349–350 (7th Cir. 1970); Haythe v. Decker Realty Co., 468 F.2d 336, 338 (7th Cir. 1972); United States v. Real Estate Development Corporation, 347 F.Supp. 776, 781–783 (N.D.Miss.1972).

Defendants' principal argument in favor of affirmance is that salesman Verhagen, who dealt with the Edwards and Shapiros, had an up-to-date listing of homes, whereas Jurinek, who dealt with the plaintiffs, was being phased out and supposedly had only badly organized and out-of-date listings. This defense is not persuasive. First of all, Jurinek testified that he did maintain a book of home listings when he met the Johnsons. If his listings were deficient, he could have borrowed Verhagen's or other listing books or called back plaintiffs, as he had promised to do. There were no findings or conclusions entered by the district court to the effect that Verhagen's listings were not included in Jurinek's, nor did the court place reliance on any such theory. This explanation is particularly unpersuasive in light of the statement of defendant's agent Moore, *supra*, indicating that the firm could veil discrimination by claiming to have misplaced pages.

■ A careful review of the record satisfies us that defendants clearly violated 42 U.S.C. §§ 1982 and 3604. Consequently, with liability now established, the judgment below must be reversed and remanded for determination of the amount of damages, if any (both actual and punitive), and other relief to be awarded plaintiffs.[6] They are also entitled to costs and attorneys' fees as prayed in the complaint. Pursuant to

Rule 23, the cause shall be reassigned by the Executive Committee of the court below.

Reversed and remanded for further proceedings consistent herewith.