Stanley **MOORE** and Judith **Moore,**
Plaintiffs-Appellees,

v.

Mary Ryan **TOWNSEND** and Jane **Melnick,** Defendants-Appellants.

Nos. 74–1742, 74–1743, 74–2067 and 74–2068.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1975.

Decided April 13, 1975.

Rehearing and Rehearing En Banc Denied July 23, 1975.

Frank O. Wetmore, II, Alan L. Unikel, Chicago, Ill., for defendants-appellants.

F. Willis Caruso, Robert G. Schwemm, Chicago, Ill., for plaintiffs-appellees.

Before CLARK, Associate Justice,* FAIRCHILD, Chief Judge, and SPRECHER, Circuit Judge.

CLARK, Associate Justice.

Stanley and Judith Moore, both of whom are Negroes, brought this fair housing action under the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1982, on April 4, 1974. The complaint charged Mary Ryan Townsend, appellant in Nos. 74–1742 and 74–2067, and Jane Melnick, appellant in Nos. 74–1743 and 74–2068, with racial discrimination in connection with their refusal to sell a dwelling house in Chicago, owned by Mrs. Townsend and offered for sale through Mrs. Melnick.

Originally the complaint sought money damages as well as equitable relief, declaratory relief, attorneys' fees, and costs. After a prompt and thorough hearing, the District Court (Marshall, J.) entered a preliminary injunction on April 16, 1974, restraining the sale of the

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

property to anyone other than the Moores *pendente lite*. Answers were filed and a jury was demanded by Mrs. Melnick. On April 23, 1974, Mrs. Townsend filed a cross claim against Mrs. Melnick and a third-party complaint against Jean Spencer Real Estate Inc. (the sales agent), seeking judgment over against them for any damages she might suffer in the litigation. These issues were severed for separate trial by the Court pursuant to Fed.R.Civ.P. 42(b).

At the trial of the Moores' suit on the merits on June 28, 1974, the Moores withdrew their claim for money damages and specifically waived recovery thereon, leaving only equitable issues and the claim for attorneys' fees. Accordingly, Mrs. Melnick's jury demand was stricken by the court, and the case proceeded to trial. On July 11, 1974, a final judgment was entered in favor of the Moores and against both Mrs. Townsend and Mrs. Melnick, on the basis of a memorandum opinion, which confirmed and supplemented the findings and conclusions filed with regard to the issuance of the temporary injunction on April 16, 1974. The court ordered Mrs. Townsend to "specifically perform the sale of the subject property of this cause at a price of $77,000." The appeals in Nos. 74–1742 and 74–1743 attack the finding of discrimination; the appeals in Nos. 74–2067 and 74–2068 attack the award of attorneys' fees of $1,500 and costs of $347 which were awarded to the Moores. We have consolidated the cases and will treat them together.

## I.

It appears that Mrs. Townsend owned a five-bedroom home in the Beverly area of Chicago with a three-car garage and a swimming pool, and had listed the property for sale with Jean Spencer Real Estate, Inc. at an asking price of $145,000. Mrs. Melnick, the salesperson with Spencer placed in charge of the sale of the Townsend property, had been in real estate for a number of years as a salesperson of Southside Chicago property. Some 85 percent of her sales were to Negro purchasers.

In March of 1974, Mr. Moore, who had been transferred to Chicago from Washington, D. C., as assistant regional director of the U. S. Census Bureau, contacted the Spencer firm in the course of looking for a new house. The Moores were shown the Townsend house, which they liked. When Mr. Moore told Mrs. Melnick that the asking price was beyond his means, she told him that it had been reduced to $95,000, and suggested that they offer $70,000 because the property was in "a changing neighborhood". A written offer was prepared on March 16th.

A day or two later, Mrs. Melnick told the Moores that their offer had been rejected, but stated that Mrs. Townsend had countered with a $80,000 price. A $77,000 price was then offered on a standard form contract drawn up by Mrs. Melnick. A few days later Mrs. Melnick reported that Mrs. Townsend had liked it, save for a contingency clause regarding the sale of the Moores' former house in Silver Spring, Maryland. Mr. Moore replied that he had received a letter from his brother advising him that the closing of the sale of the Silver Spring home was set for April 1st.

On March 25, 1974, Mrs. Melnick called Moore and told him that Mrs. Townsend had signed and accepted their offer. She added that she would leave his copy of the contract at his office and pick up a copy of the letter regarding the sale of his property in Silver Spring. On March 26th, not having heard from Mrs. Melnick, Mr. Moore called her by phone and was assured that "you have got a good contract, it's signed". She promised to deliver a copy the next day. On March 27th, Mr. Moore again called Mrs. Melnick and the assurances were repeated.

On March 28, 1974, Mrs. Melnick told Mr. Moore that Mrs. Townsend had changed her mind, that her husband was ill, her daughters had come home, she had decided not to sell, and she had instructed Mrs. Melnick not to give the

Moores the contract. On March 31, the Moores went to Mrs. Melnick's office and she repeated that she had the contract and that Mrs. Townsend had signed it, but she refused to give it to the Moores or even let them see it.

Mrs. Melnick then called her lawyer and asked if the contract was binding on Mrs. Townsend, though still in Mrs. Melnick's hands. She was advised that it was binding. In light of that advice, Mr. Moore stated that he could not understand why he could not have the home. At that point, Mrs. Melnick told the Moores that she had received telephone calls from the "Beverly Area Planning Association", complaining about her showing property in Beverly Hills to blacks. She suggested that the Moores look in the "Pill Hill" neighborhood, which was 80–90 percent black. The next day, Mr. Moore called for assistance from a fair housing organization, The Leadership Council for Metropolitan Open Communities, which contacted Mrs. Melnick. On April 2nd, she came to the offices of the Council and repeated that Mrs. Townsend had signed the $77,000 contract. When asked to produce the agreement, Mrs. Melnick stated that she had mutilated it by cutting off and destroying Mrs. Townsend's signature. An attempt to obtain Mrs. Townsend's signature on a new contract was unsuccessful and this suit followed.

## II.

In No. 74–1742 Mrs. Townsend claims that the district court erred in granting specific performances and ordering conveyance of her house to the Moores because: (1) the finding that there was an executed contract for the sale of the property was not supported by the evidence, (2) the implied finding that such a contract was delivered is contrary to the evidence, and (3) the court erred in "possibly finding" that an oral contract for the sale of real estate in Illinois existed. We find no merit in any of these contentions.

Race is an impermissible consideration in a real estate transaction, and it need only be established that race played some part in the refusal to deal. *Smith v. Sol D. Adler Realty Co.*, 436 F.2d 344, 349–350 (7th Cir. 1970). As the trial court found, it is undisputed here that Mrs. Melnick negotiated, then broke off with the Moores at least in part on the basis of their race and the asserted racial hostility of the community where the house was located. The evidence is clear that, when Mrs. Townsend decided not to sell to the Moores, Mrs. Melnick first concealed the decision, lying to the Moores about the real reasons, and then set about discouraging them from buying on the false ground of the racial hostility of the community. That Mrs. Townsend was responsible for the actions of her sales agent, Mrs. Melnick, cannot be gainsaid. *Johnson v. Jerry Pals Real Estate*, 485 F.2d 528 (7th Cir. 1973). Having determined that Mrs. Townsend and Mrs. Melnick had refused to deal with the Moores because of their race in violation of Section 1982, the District Judge had the power as well as the duty to "use any available remedy to make good the wrong done", *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969), to the Moores, including specific performance. *Smith v. Sol D. Adler Realty Company, supra; Williamson v. Hampton Management Co.*, 339 F.Supp. 1146, 1149 (N.D.Ill.1972) (Tone, J.). Although there was sufficient evidence for the District Judge to have found the existence of a contract, it matters not whether there was a specific contract or not; otherwise the very purpose of the Act would be completely frustrated. *State v. Bergeron*, 290 Minn. 351, 187 N.W.2d 680 (1971). *See also Newbern v. Lake Lorelei Inc.*, 308 F.Supp. 407, 416 (S.D.Ohio 1968). Hence appellant's contentions are of no avail. Having ordered specific performance, it was necessary for the Court to fix a fair and reasonable price, which it did at $77,000.00. That finding being supported by substantial evidence, it cannot be disturbed here. Fed.R.Civ.P. 52(a); *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

### III.

Mrs. Melnick in No. 74–1743 raises two additional grounds: (1) that it was error to refuse her a trial by jury; and (2) that the finding as to discrimination was clearly erroneous. Neither of the claims has merit. Mrs. Melnick concedes that "if the principal complaint was all that was involved in this case, she would have no dispute" over the refusal of a jury trial; but she insists that the filing of the cross claims by Mrs. Townsend against her and the Jean Spencer Real Estate, Inc. entitle her to a jury on the Moores' claim. We think not. By severing the cross action, the court has preserved the right of Mrs. Melnick to a jury on the issues raised in that action. None of the questions involved in it are raised in the Moores' suit, and none have been determined. It will be soon enough to try Mrs. Townsend's claims for damages against her real estate agents after the liability of Mrs. Townsend is determined. We cannot permit such interstitial squabbles to delay and frustrate the Moores' claim. The Moores asked only for equitable relief, attorney's fees, and costs, and a jury is not available in such cases. *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

Our examination of the record reveals that Mrs. Melnick's claim about the finding of discrimination is frivolous. Mrs. Melnick admits that she tried to steer the Moores away from the Townsend house and to a black community after the Townsend sale was fouled. This alone would satisfy the cases, and there is much more in the record.

### IV.

As for the attack on the award of costs and attorneys' fees in Nos. 74–2067 and 74–2068, appellants argue as follows:

(1) the Moores did not qualify under the test in 42 U.S.C. § 3612 [1] since Mr. Moore makes a salary of some $28,000 per year; and (2) the attorneys' fees were not even paid by the Moores, but were furnished in fact by the Leadership Council for Metropolitan Open Communities. As to the first claim, the trial court found against the appellants on the facts, and we cannot say such a finding is clearly erroneous. As to the second claim, this argument has now been foreclosed by *Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir., decided February 19, 1975). *Accord Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974). The judgment is therefore

Affirmed.

---

1. 42 U.S.C. § 3612(c) provides:

The court may grant as relief, as it deems appropriate [any appropriate], any permanent of temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff; *Provided*, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.