VILLAGE OF BELLWOOD et al.,
Plaintiffs-Appellants,

v.

GLADSTONE REALTORS et al.,
Defendants-Appellees.

VILLAGE OF BELLWOOD et al.,
Plaintiffs-Appellants,

v.

ROBERT A. HINTZE REALTORS et al.,
Defendants-Appellees.

Nos. 76–2193, 77–1019.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1977.

Decided Jan. 25, 1978.

---

F. Willis Caruso, Chicago, Ill., Robert G. Schwemm, Lexington, Ky., for plaintiffs-appellants.

Russell J. Hoover, Chicago, Ill., for defendants-appellees.

Before PELL, BAUER and WOOD, Circuit Judges.

PELL, Circuit Judge.

We have before us consolidated appeals from summary judgments granted the defendants in two lawsuits. In each suit, the same plaintiffs charged a different set of defendants (two real estate brokers and certain individual salespersons) with illegally "steering" prospective homebuyers to differing residential areas in the vicinity of Bellwood, Illinois, on the basis of their race, in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.,* and the Civil Rights Act of 1866, 42 U.S.C. § 1982. Judge Decker, being of the view that the plaintiffs in No. 76–2193 lacked standing to maintain the action, granted summary judgment and ordered the cause dismissed. In No. 77–1019, Judge Perry adopted Judge Decker's Memorandum Opinion and entered a similar judgment.

The individual plaintiffs in these cases are four white residents of Bellwood, and two black persons, one a resident of Bellwood and one a resident of adjacent Maywood, Illinois. They asserted in their complaints that they "have been denied their right to select housing without regard to race and have been deprived of the social and professional benefits of living in an integrated society." The Village of Bellwood is also a plaintiff, alleging "injur[y]

by having the housing market in such village wrongfully and illegally manipulated to the economic and social detriment of the citizens of such village." The other plaintiff is the Leadership Council for Metropolitan Open Communities, a nonprofit corporation devoted to eliminating housing discrimination in the Chicago metropolitan area, which avers that the racial steering attacked here "hamper[s] and interfere[s]" with the Council's mission, and "cost[s] [it] money" to investigate and attempt to eliminate the practice.

Each of the individual plaintiffs in these cases assisted in the prelitigation investigation of defendants' practices. Their role as testers involved posing as prospective homebuyers in visits to real estate brokers. Couples of different races expressed similar preferences as to type, size, price range, and general location of houses in which they would be interested. The defendants allegedly steered couples making similar requests to houses in different areas, dependent upon the couple's race. All of the tester couples acted solely as investigators; none were making bona fide efforts to purchase homes in the affected area. This fact was deemed critical by both district judges, who held that only the direct victims of actual discriminatory acts had standing to maintain suit under 42 U.S.C. § 3612.

The fact that the individual plaintiffs acted as testers has produced some confusion in these cases, and, before addressing the standing question, it is necessary we clarify the matter. The defendants have argued, *e.g.,* that Congress did not intend to apply the Fair Housing Act to hypothetical cases or to create a remedy for testers, and that the only discrimination attacked produced no injury to anyone because the testers would not have bought a house no matter to what area they were steered. These arguments, at least in part, miss the point. It is true that plaintiffs' discovery admissions that no bona fide homeseekers are in the case negatived the complaints' allegations that personal rights "to select housing without regard to race" are implicated here, but the other injuries alleged by the various

plaintiffs can and must be assessed without dispositive reference to the role of the individual plaintiffs *qua* testers.

What the testers did was to generate evidence suggesting the perfectly permissible inference that the defendants have been engaging, as the complaints allege, in the *practice* of racial steering with all of the buyer prospects who come through their doors. Racial steering, by its nature, is a subtle form of discrimination that is difficult if not impossible to prove otherwise than by comparing the areas to which homeseekers of different races are directed. The strength of the inference suggested by such a comparison is not affected by whether or not the "homeseeker" has a bona fide intent to purchase a home. To the degree defendants are seeking to saddle plaintiffs with the argument that testers *qua* testers have a cause of action, they have either misread the complaint or erected a straw man. To the degree the argument is that plaintiffs have failed to comply with Fed.R. Civ.P. 56(e) by showing specifically that racial steering was practiced on true homeseekers, it rings hollow in the light of defendants' refusal to date to provide any of the discovery sought by plaintiffs. Moreover, we think the tester evidence itself creates a triable fact issue.

■ Turning to the standing problems in the case, we assume, for the present purposes, that defendants have engaged in racial steering and that such a practice violates the federal statutes invoked here.[1] Inquiry into standing focuses on the litigant, not on the merits of his claim. The question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr,* 369 U.S. 186, 204 [82 S.Ct. 691, 7 L.Ed.2d 663 (1962)]." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (footnote omitted; emphasis in original).

■ The constitutional limitation of the federal judicial power to cases and controversies engenders the first rule of standing: that the plaintiff must show actual or threatened injury to himself that is likely to be redressed or avoided by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth, supra,* 422 U.S. at 498, 505, 95 S.Ct. 2197 (1975). As to the individual plaintiffs, there is no real doubt that the complaints satisfy this requirement.[2] *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), demonstrates that. Plaintiffs therein attacked the discriminatory rental practices of the large apartment complex in which they lived, asserting injury in their loss of social and professional benefits from living in an integrated community and in their stigmatization as residents of a "white ghetto." *Id.* at 208, 93 S.Ct. 364. The Supreme Court expressly found these averments to establish injury in fact. *Id.* at 209, 211, 93 S.Ct. 364. We reach the same conclusion about the virtually identical allegations of the individual plaintiffs in the cases which are now before us.[3]

*Trafficante* does not control the issue of standing of a municipal corporation to chal-

---

1. *See, e. g.,* in this regard, *Moore v. Townsend,* 525 F.2d 482, 486 (7th Cir. 1975); *Zuch v. Hussey,* 394 F.Supp. 1028, 1047 (E.D.Mich. 1975); *Fair Housing Council of Bergen County, Inc. v. Eastern Bergen County Multiple Listing Service, Inc.,* 422 F.Supp. 1071, 1074–76 (D.N.J. 1976) (hereinafter *Bergen County* ). Cf. *Johnson v. Jerry Pals Real Estate,* 485 F.2d 528 (7th Cir. 1973).

2. Neither district court, in fact, questioned the sufficiency of the complaints' allegations of injury in fact, and the defendants' only argument on this point is their assertion that the com-

plaints fail to allege racial steering practiced on bona fide homeseekers, which argument we have rejected *supra.*

3. The Court's emphasis in *Trafficante* was on the "loss of important benefits from interracial associations," *id.* at 210, 93 S.Ct. at 367, so we think it insignificant that the individual plaintiffs do not expressly allege stigmatization. Such an allegation, in any event, might well be thought to be implicit in the charge that plaintiffs have been denied the benefits of living in an integrated society.

lenge illegal manipulation of its housing market to the "economic and social detriment" of its citizens, although some guidance is provided by the Court's recognition that

> [t]he person on the landlord's blacklist is not the only victim of discriminatory housing practices; it is, as Senator Javits said in supporting the [Fair Housing] bill, "the whole community," . . ..

*Id.* at 211, 93 S.Ct. at 368 (citation omitted). That much is implicit in our determination that the individual plaintiffs here have alleged actual injury. We need not determine, however, whether or not the Village of Bellwood would have standing if the sole injury alleged was the deprivation to its citizens of the benefits of integrated living. Taking the complaints' allegations as true, and construing them liberally in a light favorable to the Village, *Warth, supra,* 422 U.S. at 501, 95 S.Ct. 2197, it is apparent that specific concrete injury with a substantial nexus to the Village's status as a unit of government could be proved under these complaints. *See Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). An area targeted as a "changing neighborhood" to which minority homeseekers may be steered could experience unnaturally rapid population turnover, with destabilized and possibly negative effects on property values and thus on its municipal tax base, and a conceivable increase in certain municipal problems to which a town such as Bellwood would have to commit resources in attacking them. *See Zuch v. Hussey, supra,* 394 F.Supp. 1028; *cf. Linmark Associates Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Barrick Realty, Incorporated v. City of Gary, Indiana,* 354 F.Supp. 126 (N.D.Ind. 1973), *aff'd,* 491 F.2d 161 (7th Cir. 1974).

■ By comparison, the actual injury alleged by the Leadership Council is rather slight. The complaints do not set out specific injury to Council members which, ar-

guably, the Council might be accorded standing to assert. The sole allegations are that racial steering interferes with the Council's mission and costs it funds to attack. But the Council's interest in open housing matters and its asserted commitment to effectuating that interest, albeit commendable, do not substitute for the concrete injury constitutionally required to invoke the jurisdiction of the federal courts. *See ʹSimon, supra,* 426 U.S. at 39–40, 96 S.Ct. 1917; *Warth, supra,* 422 U.S. at 511–17, 95 S.Ct. 2197; *Sierra Club v. Morton,* 405 U.S. 727, 739–40, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Mulqueeny v. National Commission on the Observance of International Women's Year, 1975,* 549 F.2d 1115, 1120–22 (7th Cir. 1977). The alleged dollar cost to the Council of attacking defendants' alleged practices is simply "concomitant to [its] keen concern" about open housing issues, and does not present independently cognizable injury. *Id.* at 1121. For these reasons, we affirm the judgments of the district courts insofar as they dismissed the Council from the action for lack of standing.

■ Once it is determined that litigants have alleged actual injury, standing inquiry focuses on whether the rights they assert are "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). We think that the individual plaintiffs and the Village of Bellwood present claims at least arguably within the ambit of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*[4]

■ Once again, *Trafficante, supra,* provides substantial guidance. In affirming the standing of two individuals who asserted precisely the same injury as do the individual plaintiffs here, the Court stated that "the reach of the . . . law was to

---

4. As we stated earlier, plaintiffs also invoke 42 U.S.C. § 1982. Because § 1982 is set up simply as another theory to justify relief on the same facts to which application of the Fair Housing Act is sought, and there is only one count in

each of the complaints before us, we have no need to consider standing under § 1982 separately. *See Trafficante, supra,* 409 U.S. at 209 n. 8, 93 S.Ct. 364.

replace the ghettos 'by truly integrated and balanced living patterns.' " 409 U.S. at 211, 93 S.Ct. at 368 (citation omitted). Congress' concern for those who suffer indirectly from discriminatory acts was stressed, *id.* at 210, 211, 93 S.Ct. 364, 367, as was the fact that "complaints by private persons are the primary method of obtaining compliance with the Act." *Id.* at 209, 93 S.Ct. at 366. Quoting a Third Circuit opinion [5] which had found in the Civil Rights Act of 1964 "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution," the Court expressly "reach[ed] the same conclusion" "[w]ith respect to suits brought under the 1968 Act." *Id.* Using this reasoning, we have no difficulty finding that both the Village and the individual plaintiffs here are at least arguably intended beneficiaries of the substantive provisions of the Act.

Of course, if the procedural provisions of the Act which authorize private suits somehow exclude these plaintiffs or condition their access to federal court on meeting requirements which they have not met, the judgments of the district courts would have to be affirmed nonetheless. The possibility that this is so arises because there are two provisions in the Fair Housing Act authorizing private enforcement. The only plaintiffs explicitly discussed in *Trafficante* brought suit under 42 U.S.C. § 3610, which provides that "[a]ny person who claims to have been injured by a discriminatory housing practice [defined in 42 U.S.C. § 3602(f) as a violation of sections 3604–3606 of the title] . . . (hereafter 'person aggrieved')" may file a complaint with the Secretary of Housing and Urban Development for investigation and conciliation, failing the satisfactory resolution of which he or she may commence a civil action in federal court. The plaintiffs here, never having complained to the Secretary, bring suit under 42 U.S.C. § 3612(a), which provides in part that "[t]he rights granted by sections 3603, 3604, 3605, and 3606 of this title may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy . . .."

The judgments under review are premised on the theory that *Trafficante* establishes broad standing only for suits under § 3610 and that the preferential access to federal courts contained in § 3612 should be limited to direct victims of discriminatory acts. This theory has been adopted in the Ninth Circuit, *TOPIC v. Circle Realty,* 532 F.2d 1273 (9th Cir. 1976), *cert. denied,* 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137, and is not without some plausibility. Although there were intervening plaintiffs in *Trafficante* who had not complained to the Secretary and whose standing thus depended on § 3612, *Trafficante v. Metropolitan Life Insurance Company,* 446 F.2d 1158, 1161 n.5 (9th Cir. 1971), the Supreme Court made no express reference to these plaintiffs. We cannot assume that the Court necessarily adjudicated the standing of all the plaintiffs in the case. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264 n.9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Moreover, the Court in *Trafficante* placed some emphasis on the "person aggrieved" language of § 3610, which language does not appear in § 3612.

These factors make it "impossible to tell with certainty" whether *Trafficante* was meant to control cases arising under § 3612, *Bergen County, supra,* 422 F.Supp. at 1082, even though the *Trafficante* opinion cites and quotes both § 3612 and § 3610 without distinguishing between the two and some of the opinion's language, quoted above, would appear to cover all suits brought under the Act.[6] Assuming, then, that *Trafficante* does not flatly *control* this case, we have nonetheless reached the conclusion that *TOPIC* was wrongly decided and the dis-

---

**5.** *Hackett v. McGuire Bros., Inc.,* 445 F.2d 442, 446 (3d Cir. 1971).

**6.** Also, the Court expressly reserved decision on the *Trafficante* plaintiffs' standing under 42 U.S.C. § 1982, 409 U.S. at 209 n.8, 93 S.Ct. 364, but made no such reservation as to issues pertaining to § 3612.

trict courts erred in relying on it and dismissing these actions.[7]

Whatever may be the pertinence of *Trafficante's* holding for these lawsuits, its thrust and rationale plainly suggest that the individual plaintiffs and the Village of Bellwood have standing. As we have noted, the Court emphasized the Congressional policy of protecting all those injured by discriminatory acts and practices, and stressed the critical importance of "private attorneys general in vindicating a policy that Congress considered to be of the highest priority." 409 U.S. at 211, 93 S.Ct. at 367. This reasoning would surely apply here, unless there were some reason to think that Congress intended §§ 3610 and 3612 to serve different types of private litigants.

The Ninth Circuit in *TOPIC* purported to find such a reason in the very duality of the statutory scheme. The court reasoned that the "slower, less adversary context of administrative reconciliation and mediation" was a fitting route to relief for the broad class of those injured under *Trafficante's* standards, while the direct "preferential access" to the courts set out in § 3612 must have been intended for those who needed judicial relief most, *i. e.,* those directly injured. 532 F.2d at 1276. The *TOPIC* opinion provides no evidence at all that such was in fact the contemplation of Congress, nor have the district courts or the defendants herein offered any.

Indeed, the only legislative history cited to us is inconsistent with the notion of § 3610 as a "slower," less preferred route to relief for those less needy of immediate redress. Open housing legislation was before the Congress as early as 1966. When the possibility of an administrative remedy was first proposed, it was supported on the grounds that it would provide quicker, less expensive, and fairer relief. 112 Cong.Rec. 18402, 18405, 18409 (1966) (remarks of Representative Conyers); *id.* at 18409 (remarks of Representative Vivian). At least one

Congressman opposed the proposal because it would duplicate relief under the direct judicial method. *Id.* at 18401, 18405 (remarks of Representative McClory).

During House debates in 1968 on the legislation ultimately adopted, Representative Celler, the bill's floor manager, explained the various remedial provisions as simply alternatives, drawing no distinctions between them. 114 Cong.Rec. 9560 (1968). Representative Ford introduced an analysis prepared by the staff of the Judiciary Committee which described § 3612 as "apparently an alternative to the conciliation-then-litigation approach [contained in § 3610] . . . ." *Id.* at 9612.

■ In a variety of contexts, federal courts have treated §§ 3610 and 3612 as independent alternative remedies. *See, e. g., Marr v. Rife,* 503 F.2d 735, 739 (6th Cir. 1974); *Miller v. Poretsky,* 409 F.Supp. 837, 838 (D.D.C.1976); *Young v. AAA Realty Company of Greensboro, Inc.,* 350 F.Supp. 1382, 1384–85 (M.D.N.C.1972); *Crim v. Glover,* 338 F.Supp. 823, 825 (S.D.Ohio 1972); *Johnson v. Decker,* 333 F.Supp. 88, 90–92 (N.D.Cal.1971); *Brown v. Lo Duca,* 307 F.Supp. 102 (E.D.Wis.1969). We reach the same conclusion here, and hold that there is no difference between the class of plaintiffs with standing to invoke § 3610 and the class with standing to invoke § 3612. *Accord, Wheatley Heights Neighborhood Coalition v. Jenna Resales Co.,* 429 F.Supp. 486 (E.D. N.Y.1977); *Bergen County, supra;* and *see Village of Park Forest v. Fairfax Realty,* P–H Eq. Opp. Hsing. Rptr. ¶ 13,699 (N.D.Ill. 1975), and P–H Eq. Opp. Hsing. Rptr. ¶ 13,-784 (N.D.Ill.1976); *Heights Community Congress v. Rosenblatt Realty, Inc.,* 73 F.R.D. 1 (N.D.Ohio 1975). Our decision is supported by the fact that HUD, which has significant responsibilities in the administration of the Fair Housing Act, apparently makes no distinction between the two classes. 24 C.F.R. 105.16 (1976). *See Trafficante, supra,* 409 U.S. at 210, 93 S.Ct. 364.

---

**7.** This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the position taken in the opinion rejecting the approach of the Ninth Circuit in *TOPIC.* Judge Tone did not participate in the consideration.

It may to some degree seem to offend a judicial penchant for consistency to say that Congress has, in the same act, established an administrative remedy and authorized plaintiffs, at their discretion, to bypass it. The answers are, first, that such a judicial penchant does not give a court the license to write into a statute a distinction Congress never intended, and, second, that there is sense in such a scheme. The administrative provisions of § 3610 merely make available the good offices of HUD for conciliation and settlement purposes. Nothing akin to adjudication is to be undertaken, and HUD lacks the power to provide the complainant with any coercive relief. Conciliation through HUD may well be productive in a given case, notwithstanding the toothless nature of the remedy, but it is by no means unreasonable to allow the complainant, who may well have had direct experience with the alleged discriminator, to make that choice. That, in any event, in our opinion, is the course Congress has chosen.

For the reasons set out herein, we decide that the individual plaintiffs and the Village of Bellwood[8] have standing to litigate these lawsuits. The judgments of the district courts are to that extent reversed, and affirmed insofar as they dismissed out the Leadership Council as a plaintiff, and the cases are remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; and remanded.

---

8. In a single sentence at oral argument, counsel for defendants advanced the argument, not mentioned in their brief, that the Village lacks standing because it is not a "person" as defined in 42 U.S.C. § 3602(d). That section does not limit "person" to natural persons, but sets out a broad range of organizations, including "corporations," within the definition. The Village is a municipal corporation, and we see no reason, or at least defendants have shown none, to construe § 3602(d) to exclude that type of corporation.