LeRoy AVERY et al., Plaintiffs,

v.

The CITY OF CHICAGO, a Municipal Corporation, et al., Defendants.

No. 75 C 3379.

United States District Court,
N. D. Illinois, E. D.

May 9, 1978.

James P. Chapman, Chapman & Royce, Chicago, Ill., for plaintiffs.

William R. Quinlan, Corp. Counsel, Roger B. Harris, Altheimer & Gray, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This action is brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 2000d and 3601 *et seq.* Defendants have moved to dismiss the complaint challenging the legal sufficiency of plaintiffs' allegations to state a claim for relief and plaintiffs' standing to assert any validly alleged cause of action. For the reasons stated below, defendants' motion to dismiss is granted as to plaintiffs Errol S. Whitewing, Juanita Whitewing, Leonor Rodriguez, Henry Gray, and Austine Bridges and as to Count III of plaintiffs' complaint.[1] In all other respects, defendants' motion to dismiss is denied.

Taking plaintiffs' well–pleaded allegations as true for purposes of the motion, the relevant facts are as follows: All plaintiffs are residents of an area in the City of Chicago, Illinois, commonly known as "Uptown".[2] Plaintiffs all have low incomes and live in low–income housing. Uptown is at the present time an integrated neighborhood with a substantial number of blacks, whites, latinos and native Americans in the community.

Plaintiffs allege that in early 1974, defendants Thompson and Pensacola Associates purchased property in the Uptown area for the purpose of constructing a high–rent, high–rise apartment complex to be known as the Pensacola Planned Development. The site for the development covers 4.7 acres and at the time of the purchase was zoned by the City of Chicago as a B4–4 and B4–5 Restricted Service District. At this time, on the development site, there was located the Montrose Beach Apartment Hotel which was a five–story structure and which housed 300 people. The hotel was occupied almost exclusively by low–income families, many of whom were members of minority groups. Plaintiffs allege that the owners of the hotel, Thompson and Pensacola Associates, intentionally allowed the structure to deteriorate thereby forcing the tenants to vacate their apartments. Thereupon, in April, 1974, defendants Thompson and Pensacola Associates had the hotel destroyed.

On May 8, 1975, an application was filed by Thompson and Pensacola Associates with the Chicago City Council to alter the zoning of the development site to a Residential–Business Planned Development. But for this zoning change, the Pensacola Planned Development could not have been constructed since the structures to be built on the site exceeded the limits allowed under a B4–4 and B4–5 zoning classification. On July 23, 1975, the Chicago City Council approved the zoning change.

Plaintiffs also allege that Thompson, through a controlled corporation, City–Centrum Management Co., has an ownership interest in the Broadway Courts Building located immediately south of the Pensacola Planned Development site in Uptown. All the residents of the building are low–income blacks and they have been receiving government rent subsidies. However, plaintiffs allege that Thompson has not renewed the rent subsidy agreements and has ordered all the tenants to vacate the premises by the end of October, 1975. Plaintiffs also allege that Thompson has been purchasing other properties adjacent to the Pensacola Planned Development site and that he intends to evict the low–income tenants living in those apartments.

In Count I, plaintiffs allege that the defendants have agreed and conspired to expel minorities from the Uptown area by terminating all low–cost housing in that community. Plaintiffs contend that the construction of the Pensacola Planned Development plus the destruction of the Montrose Beach Apartment Hotel and the evic-

---

1. This suit has been filed on a classwide basis but the issue of class certification is not before the Court at this time.

2. Uptown is bounded on the east by Clarendon Avenue, on the north by Foster Avenue, on the west by Ashland Avenue, and on the south by Irving Park Road.

tion of the black tenants in the Broadway Courts Building was done with the intent to drive minorities from the integrated Uptown community into the segregated areas of Chicago where the only available low-cost housing is located. Moreover, plaintiffs allege that even if the defendants lack this alleged intent, their actions in eliminating low-cost housing in Uptown and constructing high-rent apartments will have the clear effect of segregating the Uptown area.

Count II of the complaint alleges that the City of Chicago has intentionally failed to prevent the alteration of Uptown from a racially integrated community to a racially segregated community or that its actions have had the effect of segregating Uptown. Count III of the complaint is a pendent jurisdiction claim based upon Chicago ordinances requiring the Chicago City Council to take into account a community's interest before granting a zoning change. Plaintiffs allege these ordinances were violated in the 1975 rezoning of the Pensacola Planned Development site.

This complaint differs from what has become the traditional racial discrimination case concerning fair housing and is a case of first impression. Thus, unlike *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977), *cert. denied*, 434 U.S. 1024, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978), plaintiffs have not alleged that they are seeking to have low-cost housing built in the Uptown area and defendants are preventing them from constructing such housing in violation of plaintiffs' equal protection and Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, rights. Rather, plaintiffs' complaint is analogous to the "racial steering" cases such as *Village*

*of Bellwood v. Gladstone Realtors*, 569 F.2d 1013 (7th Cir. 1978), in which plaintiffs allege that actions taken by certain defendants prevent them from living in certain neighborhoods because of their race. Unlike the "steering" cases, however, plaintiffs are already residents of the integrated target area rather than persons seeking to live in a presently segregated neighborhood.

■ Although these factual distinctions exist, plaintiffs have alleged a valid cause of action claiming racial discrimination in housing opportunities. While defendants contend that plaintiffs' complaint merely alleges that poor people are being driven from Uptown and that discrimination based upon economic factors is not unlawful, see, e. g., *James v. Valtierra*, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971), a reading of the complaint shows that plaintiffs allege defendants have acted [3] with the intent and/or effect of driving minorities from Uptown. An allegation of "intentional" discrimination sets forth a claim under the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981–83. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Moreover, an allegation that actions taken which have the "effect" of discriminating in housing on the basis of race states a claim under 42 U.S.C. §§ 3601 *et seq. Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d at 1288–90. Plaintiffs have sufficiently alleged that the destruction of the Montrose Beach Apartment Hotel, the eviction of all the black tenants in the Broadway Courts Building, and the rezoning of the Pensacola Planned Development site were done for unlawful reasons and with unlawful effects.[4]

---

**3.** Although the private defendants contend otherwise, plaintiffs' complaint alleges with sufficient particularity that a conspiracy existed between the private defendants and the City of Chicago to make the private defendants' actions "state action" for purposes of plaintiffs' equal protection claims. *See e. g., United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). This court need not decide, therefore, whether purely private discrimination in the context of this case would state a

claim under the various civil rights statutes alleged in the complaint.

**4.** Of course, the Court intimates no views as to the ultimate ability of plaintiffs to prove their allegations. The statistics and facts presented by the City of Chicago defendants are more appropriately presented in a motion for summary judgment and not in support of a motion to dismiss.

Defendants argue, however, that even if plaintiffs have alleged a valid cause of action in their complaint for racial discrimination in housing, plaintiffs lack "standing" to assert the wrong alleged. As recognized in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), in order to have standing to assert a claim, each plaintiff must show that he has suffered actual or threatened injury that is likely to be redressed by a favorable decision. As to plaintiffs Avery, Buckner, Cookbey, and White, it is clear that they have suffered direct injury from the actions of the defendants. *Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013, 1015–16 (7th Cir. 1978). All of these plaintiffs have alleged that they were residents of either the Montrose Beach Apartment Hotel or the Broadway Courts Building and that they have been or will be forced to leave the integrated Uptown area and live in segregated communities.[5] While it is true that plaintiff Avery has moved to California and does not allege a desire to presently live in Uptown, thereby making him an improper plaintiff for purposes of injunctive relief, he has sufficiently alleged his standing to seek monetary damages. Plaintiffs Buckner, Cookbey and White, however, have sufficiently alleged their desire to live in the integrated Uptown community and therefore they have alleged sufficient facts to establish their standing to seek injunctive relief in this case.[6] In fact, plaintiffs Buckner, Cookbey and White are the prototype plaintiffs to bring an action alleging the expulsion of minorities from a neighborhood since they are the ones expelled and the ones who lose the ability to live in an integrated community.

Plaintiffs Errol Whitewing, Juanita Whitewing and Leonor Rodriguez, however, stand on a different footing. While the standing issue is the same, this court cannot say that they have alleged a sufficient "case or controversy" with the defendants to support their participating in this action. Thus, none of these plaintiffs allege that they live in any properties owned by the private defendants and they present no facts in their complaint to support their conclusory allegation that they are afraid that they will be driven from Uptown. Absent an allegation that living in Uptown with a reduced minority population will cause them injury, *cf. Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013, 1016, 1017 (7th Cir. 1978), plaintiffs E. Whitewing, J. Whitewing and Rodriguez must be dismissed for failure to allege a present "case or controversy" with defendants.

Finally, as to Count III of plaintiffs' complaint alleging a state law cause of action, this court, in the exercise of its discretion, is of the opinion that pendent jurisdiction should not be invoked. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, although plaintiffs' Count III does arise out of the same nucleus of operative facts as their federal claims in Counts I and II, Count III does not invoke issues concerning racial discrimination but the propriety of the Chicago City Council's decision to grant the zoning change in light of the needs of the residents of the Uptown community. Furthermore, Count III raises complex and novel issues of state law which would better be decided by a state forum. Accordingly, Count III is dismissed as are plaintiffs Gray and Bridges who merely seek to state claims under Count III of the complaint.

Therefore, plaintiffs E. Whitewing, J. Whitewing, Rodriguez, Gray and Bridges are dismissed. This court declines to exercise jurisdiction over Count III. In all other respects, defendants' motion to dismiss is denied.

---

5. In their memorandum, plaintiffs point out that plaintiffs Buckner, Cookbey and White have in fact been evicted by defendant Thompson from their apartments in the Broadway Courts Building.

6. This Court intimates no views on the propriety of any injunctive relief requiring the construction of low-cost housing by defendants in the Uptown area. *See, Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d at 1293.