**METRO FAIR HOUSING SERVICES, INC., and Kathy Watts, Plaintiffs,**

v.

**MORROWOOD GARDEN APARTMENTS LTD.; Boyd Properties, Inc.; James E. Boyd; and Maybelle Stickel, Defendants.**

Civ. A. No. C82–2778A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 8, 1983.

Donald M. Dotson, Atlanta, Ga., for plaintiffs.

Rickman P. Brown, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on motion by the defendants for summary judgment. Plaintiff's complaint seeks declaratory, injunctive, and monetary relief for an alleged violation of 42 U.S.C. § 1982 and the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Defendant asserts that the undisputed material facts show that they are entitled to judgment as a matter of law.

### I. FACTS.

The facts in this case are uncomplicated. Plaintiff Metro Fair Housing Services, Inc. (Metro) is a non-profit corporation founded in 1974 "to eliminate racial discrimination in housing and to make equal opportunity in housing a reality in the Metropolitan Atlanta Area." Plaintiff Kathy Watts is a black female who was employed by Metro as a "tester." In the present context testers are "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982). In early June of 1982 plaintiff Metro received information that defendant Morrowood Garden Apartments was discriminating against blacks. On June 10, 1982 Metro sent plaintiff Kathy Watts and a white woman, Reva Kolker, to conduct a test to determine whether or not defendant Morrowood was discriminating against blacks. The two women were instructed to inquire separately about the availability of either a two-bedroom or a one-bedroom apartment. When they arrived at the complex Ms. Watts went to the office of the resident manager, defendant Maybelle Stickel, and said that she wanted to rent a two-bedroom apartment for July 1, 1982. She was told that no two-bedroom apartments were available until the fall but that her name could be added to a rather lengthy waiting list. Shortly before leaving, Ms. Watts inquired about the availability of a one-bedroom apartment. She was told that no one-bed-room apartments were available either. Defendant Stickel suggested Ms. Watts try looking at the Anderson Park Apartments. Anderson Park Apartments is an all-black apartment complex owned by a partnership of which defendant James E. Boyd is a general partner. Boyd is also a general partner of Morrowood Garden Apartments Ltd. Morrowood has no black tenants. Boyd Deposition, p. 18.

After Ms. Watts left, Ms. Kolker, the white tester, entered to inquire about the availability of either a two-bedroom or a one-bedroom apartment. She was told that no two-bedroom apartments would be available until the fall. However, she was told that a one-bedroom apartment would be available on July 1, and that if she could put down a security deposit, the apartment would be hers. It is this alleged disparity in the information given the black and white testers regarding the availability of a one-bedroom apartment which is the basis for this lawsuit. Plaintiff claims that the failure of defendant Stickel to inform Ms. Watts that a one-bedroom apartment would be available on July 1st, combined with the fact that Ms. Stickel referred her to the all-black Anderson Park complex, while immediately thereafter representing to the white tester that an apartment would be available shortly, constitutes discrimination in housing. Defendant contends that the information it gave Ms. Watts was completely accurate, that no one-bedroom apartments were available at the time Ms. Watts asked about them—and that therefore there can be no basis for a suit based upon discrimination.

### II. THE FAIR HOUSING ACT CLAIM.

██ The Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, prohibits discrimination in the sale or rental of housing. Section 3604 makes it unlawful:

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

42 U.S.C. § 3612 specifically provides that the rights created by § 3604 may be enforced by civil actions in the district courts without regard to the amount in controversy. It is now established that both testers and non-profit organizations such as Metro have standing to bring claims under § 3604. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–79, 102 S.Ct. 1114, 1121–24, 71 L.Ed.2d 214.

 Section 3604(d) establishes an enforceable right to truthful information concerning the availability of housing. *Havens, supra,* at 373, 102 S.Ct. at 1121. In order to prevail under this section the plaintiffs in this case must show that (1) the defendant represented to them (2) because of race, color, religion, sex, or national origin (3) that an apartment was not available for rent (4) when the apartment in fact was available for rent. In the present case it is clear that defendant represented to Ms. Watts that no one-bedroom apartments were available for rent. The question then is whether such an apartment was in fact available and whether defendant made this statement because of plaintiff's race. Plaintiff is not required to establish that his denial of housing was motivated solely by racial discrimination. *Marable v. H. Walker and Associates,* 644 F.2d 390, 395 (5th Cir. Unit B 1981). "It is sufficient that race was one significant factor considered by the defendants in dealing with the plaintiff." *Id.* The use of testers has been a widely accepted mechanism for evaluating whether race is a factor in the decision not to rent. Where a white tester is given substantially different information from that given an otherwise similar black tester, an inference that race was a factor can be drawn. Defendants in this case argue, however, that the responses given the two women were different because their questions were different. Defendant characterizes Ms. Watts' inquiry about a one-bedroom apartment as an after-thought as she was going out the door. Defendant maintains that this apparent lack of a sincere interest in a one-bedroom apartment makes reasonable Ms. Stickel's failure to inform Ms. Watts that a one-bedroom apartment would be available on July 1. Defendant contrasts Ms. Watts' alleged lack of interest with the fact that the white tester inquired from the first about a one-bedroom apartment. The court is unpersuaded that this attempt to distinguish the two situations justifies summary judgment in favor of defendants. Ms. Watts had indicated when she arrived that she needed a two-bedroom apartment on July 1. When she later asked about the availability of a one-bedroom apartment she was told none was available. In fact, defendant knew that one would be available on July 1. Defendant communicated this information to the white tester who entered shortly thereafter. Whether race was a factor in the failure of defendant to inform plaintiff of the availability of a one-bedroom apartment on the date she had specified she would need to move in would seem to be a question of fact for the factfinder.

The fourth element which plaintiff must establish is that in fact an apartment was available for rent at the time she was told it was unavailable. Defendant argues that on June 10, 1982, the date the inquiry was made, there were no apartments available. However, this borders on being specious, as plaintiff had inquired about the availability of an apartment for July 1, 1982. Whether the fact that an apartment would become available in two weeks on the date plaintiff had specified means that it was available within the meaning of § 3604 would seem again to be a question of fact. It cannot be said that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law against plaintiff Watts.

 Plaintiff Metro also has standing to assert a claim under § 3604(d). *Havens, supra,* 455 U.S. at 379, 102 S.Ct. at 1124. Defendant has alleged that:

In order to render effective service to its clients under its housing, counseling and referral service, Metro must receive accurate information on housing vacancies. The inaccurate information given to the black tester makes it impossible for Metro to meet this goal, and Metro is unable to meet its contractual commitments with the U.S. Department of Housing

and Urban Development, as well as De-Kalb and Fulton Counties, to provide the counseling and referral service. Deposition of Marsha Borowski, ¶ 6.

The court has already held that there is a triable issue as to whether defendants' conduct amounted to a violation of § 3604(d). There also appears to be a triable issue as to whether this conduct injured plaintiff Metro. Although little evidence, other than the assertions by Metro's executive director, Marsha Borowski, has been offered to substantiate the allegations of injury, the court cannot say that defendant is entitled to judgment as a matter of law. The party moving for summary judgment carries a heavy burden of showing the absence of triable issues. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). Defendant has failed to carry this burden.

### III. THE § 1982 CLAIMS.

Defendants have not clearly distinguished between plaintiff's Fair Housing Act claims and their § 1982 claims. The court will undertake on its own to determine whether summary judgment is appropriate. The court does so with some reluctance because of the absence of any clear controlling precedent as to whether testers and non-profit organizations such as Metro can have standing to prosecute claims brought under § 1982. Many of the cases arising under the Fair Housing Act also involve claims arising under § 1982. Yet, often the courts have decided the cases without themselves distinguishing between the two statutes. This is disturbing, for while the two statutes are similar in many ways they appear also to have significant differences. Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. 42 U.S.C. § 1982.

It has been said that this section "bars all racial discrimination, private as well as public, in the sale or rental of property, and ... is a valid exercise of the power of Congress to enforce the thirteenth amendment." *Jones v. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1967). The section "is not a comprehensive open housing law." It is not at all clear that because testers and non-profit organizations such as Metro have standing to challenge violations of § 3604(d) that they should also have standing to challenge violations of § 1982. Even if they have standing, it is not at all clear that the facts which would support a claim for one would also support a claim for the other.

In order to make out a prima facie case under § 1982 a plaintiff must prove:

1) That he or she is a member of a racial minority;

2) That he or she applied for and was qualified to rent or purchase certain property or housing;

3) That he or she was rejected; and

4) That the housing or rental opportunity remained available thereafter. *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir.1980); *see also Harper v. Hutton*, 594 F.2d 1091 (6th Cir.1979).

Although the Third Circuit has held that a tester has standing to pursue a claim under § 1982, *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 898 (3d Cir.1977), the weight of authority appears to be to the contrary. In *Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013 (7th Cir.1978), the court dealt with an appeal from a trial court dismissal of an action brought under both § 1982 and § 3601 *et seq*. Among the plaintiffs were individual testers and the Leadership Council for Metropolitan Open Communities, "a non-profit corporation devoted to eliminating housing discrimination in the Chicago metropolitan area." The trial court had dismissed the claims because the plaintiffs lacked standing. The court of appeals held that the individual testers had standing to assert their Fair Housing Act claim and reversed the trial court. The court of appeals, however, did not even discuss the § 1982 claims. In considering the case on appeal, the Supreme Court affirmed the court of appeals' decision to grant standing to the testers to assert the Fair Housing

Act claim. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The Supreme Court did not discuss the § 1982 claim, and it is not clear whether it was before the Court. *See id.* at 128–29, 99 S.Ct. at 1622–23 (Rehnquist, J., dissenting) (discussing why plaintiffs had no standing to bring § 1982 claim).

 Inquiry into standing focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Village of Bellwood, supra,* at 1016 (quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)). The court has determined above that these plaintiffs have alleged an actual injury as a result of defendants' conduct. But this does not end the inquiry. "Once it is determined that litigants have alleged actual injury, standing inquiry focuses on whether the rights they assert are 'arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question.'" *Village of Bellwood, supra,* at 1017 (quoting *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). The focus, then, is on whether the injury claimed by these plaintiffs is within the zone of interest protected by § 1982. A party who has not been frustrated in an attempt to inherit, purchase, lease, sell, hold, or convey property has not been injured within the scope of this section. Plaintiff Watts, as a tester, has not alleged that she had any good faith desire to rent an apartment from defendant. The basis of her complaint is solely that she was given inaccurate information. While this injury is within the zone protected by § 3601, *et seq.*, it is not within the zone of interest protected by § 1982. Because plaintiff Watts has not alleged any injury to herself arising from some violation by defendant of § 1982, she is without standing to assert a claim based upon § 1982. *See Grant v. Smith,* 574 F.2d 252, 255 (5th Cir.1978) (plaintiff's good faith de-

sire to lease property would be pertinent to § 1982 claim but not to § 3604(d) claim).

 Plaintiff Metro has also failed to allege any injury within the zone of interest protected by § 1982. Plaintiff Metro claims only that defendants' conduct has impaired its ability to perform its function of providing counseling and referral services to low- to moderate-income people. Plaintiff Metro is obviously not a minority who has suffered racial discrimination in an attempt to rent or lease property. Nor does Metro seek to assert the rights of its members. Plaintiff Metro therefore has no standing to assert a claim under 42 U.S.C. § 1982 against these defendants. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343; *Village of Bellwood v. Gladstone Realtors,* 569 F.2d 1013 (7th Cir. 1978).

In sum, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is DENIED as to the claims asserted by both plaintiffs under 42 U.S.C. § 3604(d). It is GRANTED as to the § 1982 claims because the plaintiffs lack standing.