**Cynthia RICHARDSON and Gale Richardson, Plaintiffs-Appellants,**

v.

**Michael HOWARD, Defendant-Appellee.**

No. 81–3029.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1983.

Decided July 21, 1983.

William R. Sullivan, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiffs-appellants.

Eugene Lieberman, Chicago, Ill., for defendant-appellee.

Before PELL, and CUDAHY, Circuit Judges, and JAMESON, Senior District Judge.*

CUDAHY, Circuit Judge.

This case comes to us on appeal from an order of the District Court for the Northern District of Illinois. Appellants filed suit, alleging that the defendant had violated both the Fair Housing Act of 1968, 42 U.S.C. § 3604, and the Civil Rights Act of 1866, 42 U.S.C. § 1982. After a bench trial, the district court issued Findings of Fact and Conclusions of Law which held in favor of the defendant on all issues. This appeal followed. We vacate and remand for a new trial.

---

* Honorable William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

## I.

The complaint in this case was filed in July of 1978 by two black female citizens of the State of Illinois against the owners of an apartment complex in Chicago Ridge, Illinois. The complaint was based upon the owner's allegedly racially motivated refusal to rent the appellants an apartment.

The appellants are two sisters who grew up on the south side of Chicago. When they decided to move out of their parents' home, they began looking for rental apartments in the general area where they had grown up. The apartment complex involved in this case, the "Ridge-Terrace Apartments" ("Ridge-Terrace"), is an 84-unit complex which is owned by the appellee and located in the area in which the sisters were looking.

Appellant first became interested in Ridge-Terrace after seeing an advertisement offering two-bedroom apartments as being available for immediate rental. Cynthia Richardson testified that she telephoned the number given in the ad on June 15, 1978, and confirmed the availability of apartments. Two days later, on June 17, the two sisters went to the complex to examine the apartments. The sisters met the manager of the apartment complex, Lucille Chanult, a white woman, who told them that there were no apartments available for rent, that the last one had just been rented and that she did not know when one would next become available. There is some dispute about the tone of this conversation. Cynthia Richardson testified that Mrs. Chanult was somewhat abrupt and rude, while Mrs. Chanult testified that the then-recent death of her husband put her in an unsocial frame of mind. There was also testimony that, due to a discount advertising rate, ads for apartments in Ridge-Terrace ran year round, even if no apartments were currently available.

Cynthia Richardson testified that immediately after her visit to the complex, upon returning home, she called Mrs. Chanult and, without identifying herself, again inquired as to the availability of apartments. Mrs. Chanult allegedly responded that there were at least two two-bedroom apartments available, and one more might soon become available.

Her suspicions aroused by these events, Cynthia Richardson sought counseling from various agencies involved in housing discrimination. She was eventually referred to the Leadership Council for Metropolitan Open Communities (the "Leadership Council"), a private organization. The Leadership Council assigned one of its investigators, a Mrs. Joan Elbert, who is white, to the case, and a decision was made to further investigate appellant's suspicions concerning discrimination by conducting a "test" with Mrs. Elbert.

On June 22, 1978, Cynthia Richardson and Joan Elbert went to Ridge-Terrace. While Ms. Richardson waited in the car, Mrs. Elbert went into the complex, met Mrs. Chanult, and expressed her interest in a two-bedroom apartment. Mrs. Chanult showed Mrs. Elbert one apartment, and indicated to her that another apartment was also available. There is conflicting testimony as to what transpired next. Mrs. Elbert testified that she told Mrs. Chanult that she might want to have her sister look at the apartment, that she had an appointment to look at another apartment, and, if she were interested in Ridge-Terrace, she would get back to Mrs. Chanult. Mrs. Elbert further testified that she did not tell Mrs. Chanult her last name, did not fill out an application, did not leave any deposit, and, perhaps most critically, did not ask Mrs. Chanult to hold the apartment. Mrs. Chanult contradicted this, testifying that Mrs. Elbert asked her to hold the apartment for her.

Mrs. Elbert left the complex and rejoined Ms. Richardson in their car. Approximately a half hour later, Ms. Richardson went into the complex and went to the hallway outside the apparently empty manager's office. According to appellant, Mrs. Chanult came walking down the hallway with two other people, greeted another woman who was standing waiting outside of the office with appellant, walked around appellant,

and began to close the door behind her. At that point appellant asked Mrs. Chanult if she could look at an apartment. Mrs. Chanult replied that there were no apartments available. Appellant then left the complex.

Shortly thereafter, Mrs. Elbert reentered the complex to look for Mrs. Chanult. She was unable to find her, so she left her name and telephone number with a resident to give to Mrs. Chanult. Later that afternoon, Mrs. Elbert received a call from Mrs. Chanult. Mrs. Elbert told Mrs. Chanult that she wanted the apartment she looked at and requested Mrs. Chanult to hold it until the next day. Mrs. Elbert went out to Ridge-Terrace the following day, filled out an application and left a deposit. Mrs. Elbert testified that she was again informed at this point that there were two apartments available. Mrs. Elbert never subsequently signed a lease, and the apartment she applied for was held open until July 5, when the owner was served with a summons in this case.

There are several key facts which remain somewhat murky. The most important of these is whether there were any apartments actually available at the times appellant inquired. Contradictory testimony was presented on this matter. Mrs. Chanult testified that at the time she showed Mrs. Elbert apartment 203, another person had made an application for the apartment and actually given a deposit to hold the apartment. Mrs. Chanult later contradicted this testimony, stating that she thought apartment 203 was freely available at the time it was shown to Mrs. Elbert. There was also conflicting testimony as to whether it was common practice to have people who inquired about apartments at Ridge-Terrace fill out applications even if there were no apartments currently available. It is uncontested that appellants were never asked if they wished to fill out an application.

## II.

We must vacate and remand this case for a new trial. The trial court both imposed an incorrect burden of proof and wrongly discredited the testimony of Mrs. Elbert because she was a "professional tester."

The district court stated that the testimony of Mrs. Elbert had to be "taken in light of the fact that Elbert, a professional tester, admitted that she had given false information to Renault [sic] in her guise as a prospective tenant . . . ." Slip op. at 5. This court and others have repeatedly approved and sanctioned the role of "testers" in racial discrimination cases.[1] *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); *Washington v. Sherwin Real Estate, Inc.,* 694 F.2d 1081 (7th Cir.1982); *Blockman v. Sandalwood Apartments,* 613 F.2d 169 (7th Cir.1980); *Village of Bellwood v. Gladstone Realtors,* 569 F.2d 1013 (7th Cir.1978), *aff'd in part,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). It is frequently difficult to develop proof in discrimination cases and the evidence provided by testers is frequently valuable, if not indispensable. It is surely regrettable that testers must mislead commercial landlords and home owners as to their real intentions to rent or buy housing. Nonetheless, we have long recognized that this requirement of deception was a relatively small price to pay to defeat racial discrimination. The evidence provided by testers both benefits unbiased landlords by quickly dispelling false claims of discrimination and is a major resource in society's continuing struggle to eliminate the subtle but deadly poison of racial discrimination. We have discovered no case in which the

---

1. As the Supreme Court has explained in the context of a housing discrimination case, " 'testers' are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982).

credibility of testimony provided by a tester has been questioned simply because of the tester's "professional" status.[2] Indeed, tester evidence may well receive more weight because of its source. Testers seem more likely to be careful and dispassionate observers of the events which lead to a discrimination suit than individuals who are allegedly being discriminated against. In sum, we see no reason to question the credibility of Mrs. Elbert simply on the grounds that she was acting as a tester and find that plaintiffs are entitled to a new trial because of the district court's incorrect treatment of Mrs. Elbert's key testimony.[3] We think that the circumstances of the case are sufficiently questionable that an incorrect basis for evaluating Mrs. Elbert's credibility, even taken by itself, amounts to reversible error.[4]

Vacated and remanded.

**2.** We note further that testers have even been given standing to sue under the Fair Housing Act, *Havens Realty Corp.,* 455 U.S. at 373–74, 102 S.Ct. at 1121–22.

**3.** For the benefit of the district court on remand, we also wish to note that the district court apparently confused the differing burdens of proof to be applied under § 1982 of the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Fair Housing Act, 42 U.S.C. § 3601–3619. For recent discussions of these matters, see *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184 (7th Cir.1982), *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032 (2d Cir.1979), and *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir. 1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978).

**4.** Evidence was also presented at trial that the defendant had previously rented apartments to

tenants of Indian origin, and, at the time of the events in question, had promised one of the available empty apartments to one of the Indian tenants who wished to switch to a larger apartment. The district court apparently thought that the defendant's willingness to rent an apartment to another person who was "of a color as dark as Richardson" was evidence of a lack of racially discriminatory intent. This evidence, although perhaps tangentially relevant, is highly inconclusive as to the existence of racial discrimination here. At best, evidence of nondiscrimination against one minority group is simply evidence which can be weighed along with all the relevant evidence in considering the basic issue whether impermissible racially motivated discrimination occurred. *See, e.g., Weathers v. Peters Realty Corp.,* 499 F.2d 1197 (6th Cir.1974).