*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CV-0975

JAMES NIDES, APPELLANT,

V.

DVC INDUSTRIES, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CA-003969-B)

(Hon. Milton Lee, Motions Judge)
(Hon. Robert Rigsby, Motions Judge)

(Submitted February 5, 2025                    Decided May 8, 2025)

*Thomas C. Willcox* was on the brief for appellant.

*Beverly A. Pohl* and *Christian Joshua Myers* were on the brief for appellee.

Before BECKWITH, EASTERLY, and SHANKER, *Associate Judges*.

EASTERLY, *Associate Judge*: In this case we interpret the tester standing provision of the District's Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3905(k)(1)(B). Like the Superior Court, we conclude that appellant James Nides failed to demonstrate in his amended complaint that he had tester standing under the CPPA. As Mr. Nides did not assert standing on any other basis, we affirm

the Superior Court's order dismissing his suit against appellee DVC Industries, d/b/a The Spice Lab, for alleged violations of the CPPA.

## I.    Factual and Procedural Background

Mr. Nides filed suit against The Spice Lab under the CPPA, D.C. Code §§ 28-3901 to 28-3913, alleging that the salt The Spice Lab labeled and sold as "Pink Himalayan Salt" was not, as advertised, "hand[-]mined salt found naturally deep inside the pristine Himalayan Mountains," but instead came "from salt mines in Khewra, Pakistan[,] hundreds of miles away from the Himalayas."[1]  The amended complaint stated that Mr. Nides had purchased a package of The Spice Lab's Pink Himalayan Salt and asserted that this purchase was "all that is necessary to give [him] standing to be the Representative in this action," citing the CPPA's tester standing provision, D.C. Code § 28-3905(k)(1)(B).[2]

---

[1] Mr. Nides provided no factual support for his assertion that The Spice Lab's Pink Himalayan Salt came from Pakistan, other than his counsel's affirmation, *see infra* note 2, and citations to an NPR article and a book review from the New Indian Express (neither of which reference The Spice Lab or its product).

[2] Notwithstanding this representation, the amended complaint also noted that "the language of the statute references purchases to 'test' or to 'evaluate,'" and he purported to attach to his complaint "[a]n evaluation of the product."  This "evaluation" took the form of a two-page "affirmation" by Mr. Nides's counsel—the same lawyer who represents him before this court—which stated that counsel had "evaluated the testing the Defendant did on its own product, determining the absence of any minerals, except sodium" and "compared this to three companies

In addition to citing to the tester standing provision of the CPPA, the amended complaint compared Mr. Nides's standing to the tester standing successfully asserted in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982),[3] and in *Molovinsky v. Fair Employment Council of Greater Washington, Inc.*, 683 A.2d 142 (D.C. 1996),[4] two cases cited by the D.C. Council when it amended the CPPA in 2012 to explicitly authorize tester standing, *see* Consumer Protection Amendment Act of 2012, Report on Bill 19-0581 before the Committee on Public Services and Consumer Affairs, Council of the District of Columbia at 5 (Nov. 28, 2012) [hereinafter, Committee Report]. Mr. Nides also cited to this court's decision in *Grayson v. AT & T Corp.*, 15 A.3d 219 (D.C. 2011), which he asserted "conferred"

---

whose own testing indicated the presence of over 80 minerals." *But see* Opp'n to Mot. to Dismiss 9 (characterizing the affirmation as merely "summariz[ing] the facts" described in the complaint). Counsel did not provide any information about the purported "testing" conducted by The Spice Lab or these three companies; we understand him to have been referring only to information provided on the label of The Spice Lab's Pink Himalayan Salt, as well as information provided in online vendor descriptions of salt products from three other companies. Counsel also conclusorily asserted that The Spice Lab's Pink Himalayan Salt came from Peshwar, Pakistan. Lastly, counsel asserted that the amended complaint did not run afoul of Rule 11 of the Superior Court Rules of Civil Procedure.

[3] In *Havens Realty*, the Supreme Court held that a "tester" posing as a prospective tenant, who alleged that she was turned away on the basis of her race, had standing to sue under the Fair Housing Act even though she had no intention of actually renting the apartments in question. 455 U.S. at 373-74.

[4] In *Molovinsky*, this court concluded that "testers" who had experienced sex discrimination while posing as job-seekers had standing to sue under the D.C. Human Rights Act. 683 A.2d at 144, 146.

"liberal standing requirements" under the CPPA applicable to the tester standing context, notwithstanding that *Grayson* preceded the 2012 amendments to the statute. Mr. Nides never asserted that he had standing as a consumer under D.C. Code § 28-3905(k)(1)(A) (allowing "[a] consumer [to] bring an action seeking relief from the use of a trade practice in violation of a law of the District").

The Spice Lab filed a motion to dismiss, arguing, inter alia, that Mr. Nides lacked standing under the CPPA and that his amended complaint failed to state a claim upon which relief could be granted pursuant to Super. Ct. Civ. R. 12(b)(6). The Superior Court ruled for The Spice Lab on both grounds. The court concluded first that Mr. Nides had contradicted his claim that The Spice Lab falsely advertised its product as coming from the Himalayas when it was in fact from Pakistan by acknowledging in his complaint that part of the Himalayan Mountain range is in Pakistan,[5] and second that Mr. Nides lacked tester standing under D.C. Code § 28-3905(k)(1)(B). On the question of standing, the court found that the amended complaint alleged nothing more than that Mr. Nides "ma[de] a single online

---

[5] Mr. Nides alleged in his complaint that "a typical consumer is not aware of the geography of the Himalayas, which cover approximately 1,500 miles, beginning in Pakistan, and form an arc through northern India, Nepal, and Bhutan, before ending in China," although he also asserted that Khewra, Pakistan, where he alleged The Spice Lab's salt to be from, is "hundreds of miles away from the Himalayas." (Counsel's affirmation, on the other hand, *see supra* note 2, alleged that the salt came from Peshwar, Pakistan, not Khewra, and did not specifically allege that Peshwar was not in the Himalayas.)

purchase of the product" and "failed to provide any allegation regarding testing or evaluation of the product or indication that he intends to conduct such an evaluation or testing in the future." The court declined to rely on references in the amended complaint to "testing of three other pink salts," which, it said, had no obvious bearing on the Pink Himalayan Salt sold by The Spice Lab.

After Mr. Nides unsuccessfully moved for reconsideration, he appealed to this court.

## II. Discussion

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Grayson*, 15 A.3d at 229 (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)). The elements of standing "are 'an indispensable part of the plaintiff's case,' and thus 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Fraternal Ord. of Police Metro. Police Dep't Lab. Comm. v. District of Columbia*, 290 A.3d 29, 37 (D.C. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "[T]o survive a motion to dismiss for lack of standing, 'a complaint must contain sufficient factual matter, accepted as true,' to make the" elements of standing "plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw [a] reasonable inference" that the plaintiff has standing. *Ctr. for Inquiry, Inc. v. Walmart, Inc.*, 283 A.3d 109, 117 (D.C. 2022) (quoting *Iqbal*, 556 U.S. at 678). "Allegations that are merely formulaic or conclusory will not suffice." *Fraternal Order of Police Metro. Police Dep't Lab. Comm.*, 290 A.3d at 37. We review the Superior Court's dismissal of Mr. Nides's amended complaint for lack of standing de novo, "accept[ing] the allegations of the complaint as true, and constru[ing] all facts and inferences in favor of the plaintiff." *Grayson*, 15 A.3d at 228; *see also id.* at 232.

As he did in the Superior Court, Mr. Nides argues that he has standing to sue under the CPPA's tester standing provision, D.C. Code § 28-3905(k)(1)(B),[6] which states,

> An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.

The concept of tester standing has existed for decades, most prominently in the context of civil rights and anti-discrimination litigation. *See, e.g.*, *Havens Realty*,

---

[6] Mr. Nides cited to the 2001 version of D.C. Code § 28-3905(k), which did not include the relevant language regarding tester standing; nonetheless, the language he quoted is the present-day language of Subsection (k)(1)(B).

455 U.S. at 373 (affirming standing under the FHA for Black "'testers' . . . who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices"); *Molovinsky*, 683 A.2d at 144-46 (affirming standing for "testers" who "pose[d] as job seekers" to investigate gender discrimination under the D.C. Human Rights Act); *see also Des Moines Civ. & Hum. Rts. Comm'n v. Knueven*, 988 N.W.2d 694, 703 (Iowa 2023) (compiling cases in which "courts have accepted evidence from testers to examine discrimination claims"). Tester standing, in this context, plays an important societal role, uncovering legal violations that may not otherwise be identified. *See Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 299 (7th Cir. 2000) ("[B]ecause proof of discrimination is often quite difficult to muster[,] . . . testers provide evidence that, we have recognized, 'is frequently valuable, if not indispensable.'" (quoting *Richardson v. Howard*, 712 F.2d 319, 321 (7th Cir. 1983))); Melvin J. Kelley IV, *Testing One, Two, Three: Detecting and Proving Intersectional Discrimination in Housing Transactions*, 42 Harv. J.L. & Gender 301, 306 (2019) ("Test cases, which deliberately design and orchestrate events for the express purpose of uncovering and challenging practices and policies as unlawful, have long been part of the arsenal of civil rights activists."); Rachel Bayefsky, *Public-Law Litigation at a Crossroads: Article III Standing and "Tester" Plaintiffs*, 99 N.Y.U. L. Rev. Online 128, 129 (2024) ("The idea of a 'test case' is a staple of

public-law litigation meant to bring about societal change.").

The D.C. Council added Subsection (k)(1)(B) to the CPPA in 2012, expressly incorporating this civil rights tradition. *See* Committee Report at 5 (citing *Havens Realty* and *Molovinsky* and explaining that "'tester standing' has a long and storied history in our nation's civil rights jurisprudence"). The new subsection was intended to authorize "consumers who act as product or service testers . . . to bring an action on their own behalf, for the good or service they purchased or received *for the purpose of testing it*." *Id.* at 4 (emphasis added); *see also id.* at 5 (explaining that Subsection (k)(1)(B) allows "D.C. consumers [who] offer to purchase, or actually purchase, products or services *with the intent of determining whether those products or services are what they claim to be*" to assert tester standing (emphasis added)).

Mr. Nides asks us to reject the Superior Court's "assum[ption] that [he] had to perform testing in order to perform an evaluation based on the defendant's own admissions and third-party testing."[7] We leave for another day the question of what,

_____

[7] We are not certain to what "admissions" Mr. Nides is referring. On appeal, he asserts that "by the admission not on the front of the container, but in the Nutrition Panel[], the Defendant admitted the Product contained no minerals." But that statement, as Mr. Nides acknowledges, is "expressly contradicted" by the front panel, as pictured in the images in his amended complaint. It is true that Figure Three, which we assume to be the "Nutrition Panel" to which he refers, lists the only ingredient as "Himalayan Pink Salt." But Figure Two—presumably an image of the front of the salt container —states that the salt is "naturally embedded with 84 minerals," and Figure Four (which we presume to be a description of the salt in

if any, testing or evaluation a plaintiff must ultimately *perform* in order to satisfy tester standing. But at a minimum, the statutory language is clear that for a complaint to pass muster under Subsection (k)(1)(B), it must contain sufficient facts to plausibly allege that the plaintiff purchased the product or service "in order to test or evaluate" it—by which we understand the statute to require, consistent with the legislative history discussed above, a showing that the plaintiff actually *intended* to test or evaluate the product. *See United States v. Technodyne LLC*, 753 F.3d 368, 383 (2d Cir. 2014) (noting that "in order to" statutory language "requires proof of a particular intent").

Further, we conclude that this intent must go beyond merely observing a product's label or reviewing third-party tests. The tester must intend to actually do something *with the purchased product or service* itself that could expose new information about its "qualities pertaining to use for personal, household, or family purposes," D.C. Code § 28-3905(k)(1)(B); otherwise the purchasing requirement would be pointless. This interpretation of the statute is in keeping with the information-revealing purpose of tester standing; that is, to "determin[e] whether . . . products or services are what they claim to be." Committee Report at 5. If a tester does nothing more than observe tests, labels, or images that are already readily

___

question, though it is not clearly labeled as such) describes the product as containing "a beneficial amount of 84 trace elements & iron."

available to the public, they are not serving their role of uncovering new information. *Cf. Havens Realty*, 455 U.S. at 368 (testers uncovered evidence of racial steering by "ma[king] inquiries" about the availability of apartments for rent); *Molovinsky*, 683 A.2d at 145 (testers uncovered evidence of sex discrimination by "pos[ing] as job seekers" to request services from a company offering professional support).

Under this interpretation of Subsection (k)(1)(B), Mr. Nides's amended complaint failed to support his standing as a tester. Nowhere in his amended complaint did Mr. Nides allege that he purchased The Spice Lab's Pink Himalayan Salt "in order to test or evaluate" it, D.C. Code § 28-3905(k)(1)(B), or "with the intent of determining whether [the salt is] what [it] claim[s] to be," Committee Report at 5. Instead, he simply alleged that he "purchased a package of 'Pink Himalayan Salt' made by [The] Spice Lab" and that, "[u]nder the CPPA, such purchase is all that is necessary to give [him] standing" pursuant to D.C. Code § 28-3905(k)(1)(B). The latter is not a factual allegation, it is a legal conclusion, and pleading it does not make it so. *See Fraternal Order of Police Metro. Police Dep't Lab. Comm.*, 290 A.3d at 37 (explaining that "to survive a motion to dismiss for lack of standing . . . [a]llegations that are merely formulaic or conclusory will not suffice").

Before this court, Mr. Nides argues that he did undertake an "evaluation" of the product sufficient to satisfy the tester standing provision of the CPPA. But the only "evaluation" gestured at in the amended complaint is the "affirmation" from Mr. Nides's attorney, which stated that counsel had "evaluated the testing [that The Spice Lab] did on its own product, determining the absence of any minerals, except sodium" and "compared this to three companies whose own testing [of their products] indicated the presence of over 80 minerals." Counsel's statements do not "allow[] the court to draw [a] reasonable inference" that Mr. Nides purchased the product in order to test or evaluate it. *Ctr. for Inquiry*, 283 A.3d at 117 (quoting *Iqbal*, 557 U.S. at 678).

To begin with, there was no indication in the amended complaint or affirmation that Mr. Nides's purchase of the salt played any role whatsoever in counsel's "evaluation." The affirmation did not assert that counsel evaluated the *product* that Mr. Nides purchased; instead counsel asserted that he evaluated *testing* conducted by The Spice Lab, seemingly by doing nothing more than reviewing the product label.[8] In any event, as explained above, an intent to read a label—or to review preexisting, third-party testing—does not constitute the intent to "test or

_____

[8] Although The Spice Lab has not expressed this concern, we note that the D.C. Rules of Professional Conduct generally prohibit a lawyer from acting as both advocate and witness at trial in the same case. D.C. R. Pro. Conduct 3.7(a),

evaluate" the purchased product contemplated by the statute. Such an "evaluation" uncovers nothing new or hidden; the information is necessarily right there in the open for anyone to see.

Nor is Mr. Nides helped by his reliance on *Havens Realty*, *Molovinsky*, and *Grayson*. To be sure, those cases provided the foundation for tester standing in Subsection (k)(1)(B). *See* Committee Report at 4-5. But the question in this appeal is not whether tester standing exists under the CPPA but rather whether Mr. Nides's amended complaint alleged facts sufficient to satisfy the statutory requirements of tester standing under the CPPA. As we have explained, it did not.

In sum, because his amended complaint did not allege that Mr. Nides purchased The Spice Lab's Himalayan Pink Salt with any intent to "test" or "evaluate" it, we agree with the Superior Court's conclusion that the amended complaint should be dismissed for lack of standing.[9]

---

[9] As noted above, Mr. Nides did not argue in Superior Court that he had standing as a consumer under D.C. Code § 28-3905(k)(1)(A), nor does he make that argument here. Thus we do not consider it.

We also do not consider whether Mr. Nides satisfied the Article III standing requirement that he suffered a "minima of injury in fact," a question that is distinct from whether he satisfied the statutory requirements of D.C. Code § 28-3905(k)(1)(B). *Grayson*, 15 A.3d at 234; *id.* at 244 ("[W]ithout a clear expression of intent by the Council to eliminate our constitutional standing requirement, . . . a lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a

For the foregoing reasons, the Superior Court order dismissing the case is affirmed.

*So ordered.*

---

concrete injury-in-fact to himself."); *see also Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 181 (D.C. 2021) (explaining that, while District courts "are not [constitutionally] bound by the requirements of Article III," this court will "generally follow" Article III standing jurisprudence "for prudential reasons," though that "prudential judgment is subject to legislative override" by the D.C. Council (alteration in original) (citations omitted)). In *Animal Legal Defense Fund*, we held that the 2012 amendments to the CPPA did indeed "modify Article III standing requirements" with the addition of Subsection (k)(1)(D), which "applies only to a particular subset of nonprofit organizations: 'public interest organization[s].'" *Id.* at 183-84 (alteration in original). We noted, however, that "Article III standing principles continue to apply to organizations bringing suit under (k)(1)(C)," which allows for organizational tester standing for other nonprofits and uses nearly identical language to (k)(1)(B). *Id.* at 182-85 & n.5.

Finally, we do not separately address the Superior Court's denial of Mr. Nides's motion for reconsideration, which Mr. Nides referenced only in passing in his brief to this court. *See Comford v. United States*, 947 A.2d 1181, 1189 (D.C. 2008) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990))).